SEAN C. GALLAGHER, J.
*825 {¶ 1} Christopher Hill appeals his conviction for involuntary manslaughter, the predicate offense being an unindicted, drug trafficking felony. The trial court imposed an 11-year prison term. We affirm.
{¶ 2} Hill frequently bought drugs from Jonathan Mentor. Mentor recalled ten transactions over three months preceding the death of Mentor's brother, in which Hill purchased marijuana, gummy edibles, and hash oil. Hill would text Mentor to arrange the transaction, which occurred at the same location, a house in Garfield Heights that belonged to Hill's friend. Mentor never carried a firearm and always came alone.
{¶ 3} On the day Mentor's brother was killed, Hill met Mentor in the morning to purchase drugs. Hill brought along Deon Bulger, a member of the Heartless Felons gang, whom Hill met while both were serving prison terms. Bulger was interested in buying drugs as well. Bulger inquired about a larger purchase, over twice the amount of drugs that Hill was purchasing. Mentor only brought what was needed for his deal with Hill, so the trio agreed that Hill would contact Mentor to set up a second buy between Mentor and Bulger later in the day. Mentor believed that Hill would be involved in the second purchase.
{¶ 4} Later in the afternoon, Hill contacted Mentor and set up the second transaction for the drugs Bulger had requested. Mentor was going out of town with two of his brothers and a friend. All four agreed to stop and allow Mentor to sell the drugs on their way out of town. Hill and Mentor agreed on a new location, but when Mentor arrived, the house appeared abandoned. Hill assured Mentor that the address was correct, through text messaging, going so far as to claim another friend lived there. Bulger then approached the vehicle, accompanied by an unknown person, and asked for the drugs. Bulger and his accomplice approached the parked car from both sides. Mentor revealed the merchandise, but refused to hand it over without Bulger first tendering payment. Bulger and his accomplice then drew firearms and demanded the drugs. Mentor's brother attempted to drive away. Bulger and his accomplice began firing into the car, killing Mentor's brother who had been driving.
{¶ 5} After the incident, Hill submitted himself to police custody and admitted to setting up the transaction between Bulger and Mentor, but disavowed any intent to conspire with Bulger. The state believed that Hill aided Bulger in the robbery, claiming that Hill facilitated the drug transaction as a ruse to get Mentor alone and in an unfamiliar location. The jury did not believe the state's theory, however, and all charges based on Hill conspiring with Bulger ended in an acquittal. The jury found Hill guilty of involuntary manslaughter, with the predicate offense being drug trafficking.
{¶ 6} R.C. 2903.04(A) provides that no person shall cause the death of another "as a proximate result of the offender's committing or attempting to commit a felony." The culpability required for involuntary manslaughter is based on the mens rea of the predicate offense. In this case, the state was required to prove that Hill knowingly sold or offered to sell a controlled substance under R.C. 2925.03(A). Although the jury was instructed to consider R.C. 2925.03(B), preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing a controlled substance when the offender knows or has reason to believe that the *826 controlled substance is intended for sale or resale, there was no evidence that Hill did any of those things before Mentor attempted to sell the drugs to Bulger. As a result, the only theory offered by the state was that Hill sold or offered to sell drugs by facilitating the transaction, or by aiding and abetting Mentor in committing the trafficking offense.
{¶ 7} This seems problematic for the state's involuntary manslaughter theory, which is based on the connection between Hill and Bulger. According to the state's theory, Hill aided and abetted both Bulger and Mentor despite the undisputed fact that Bulger had an antagonistic relationship to Mentor-Bulger intended to steal drugs from him. Thus, the proximate causation element of the involuntary manslaughter was based on Hill's relationship with Bulger, while the predicate offense was based on Hill's relationship with Mentor. On this point, the state repeatedly emphasized that Hill aided and abetted Mentor in the sale of drugs, but that Hill was also aware of the likelihood that Bulger would rob Mentor for the purposes of foreseeing the death of Mentor's brother. If Hill was aware of Bulger's intent or propensity to commit robbery, then how could Hill be deemed to have aided and abetted drug trafficking? If the state's theory is believed, Hill did not knowingly offer the controlled substances for sale or attempt to do so. The transaction was a ruse, arranged under false pretenses in order to facilitate the robbery. This arguably deprives Hill of the mental culpability of knowingly offering to sell drugs-Hill never intended to sell or offer to sell a controlled substance. As perplexing as the state's theory appears from the parties' discussion, Hill does not challenge that inconsistency. The state, therefore, is not under any obligation to furnish additional insight.
{¶ 8} In order to prove that Hill committed involuntary manslaughter, the state needs to demonstrate that the death of Mentor's brother was the proximate result of Hill's aiding and abetting Mentor in trafficking drugs. In order for criminal conduct to constitute the "proximate cause" of a result, "the conduct must have (1) caused the result, in that but for the conduct the result would not have occurred, and (2) the result must have been foreseeable." State v. Gibson , 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, 2013 WL 5517927, ¶ 36, citing State v. Muntaser , 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, 2003 WL 22455703, ¶ 38. It is not necessary for the defendant to foresee or know of the exact consequences of his conduct. Id. "The consequences are foreseeable if what actually transpired was natural and logical of the defendant's conduct and was within the scope of the risk created by the defendant." Id. Thus, proximate cause in this context is a two-part inquiry.
{¶ 9} In his appeal, Hill raises two arguments: (1) that Hill cannot be guilty of involuntary manslaughter because he was not present at the scene of the crime, and therefore, Hill did not knowingly cause the death of another; and (2) that his conviction is based on insufficient evidence or is against the manifest weight of the evidence in light of the state's failure to prove that Hill conspired with Bulger in committing aggravated robbery and murder. Neither argument has merit.
{¶ 10} Hill's argument that he did not knowingly cause the death of the victim is irrelevant. Under the involuntary manslaughter statute, R.C. 2903.04(A), the legislature criminalized a result-no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.
*827 State v. Anthony , 2015-Ohio-2267, 37 N.E.3d 751, ¶ 72-73 (8th Dist.) (S. Gallagher, J., dissenting). The involuntary-manslaughter statute does not contain a mens rea component. State v. Fry , 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43. The culpability required for involuntary manslaughter is the mens rea of the predicate offense. State v. Brown , 8th Dist. Cuyahoga No. 69149, 1996 WL 355296, 1996 Ohio App. LEXIS 2711, 10 (June 27, 1996), citing State v. Campbell , 74 Ohio App.3d 352, 358-359, 598 N.E.2d 1244 (1st Dist.1991). If the offender commits a felony offense with the requisite culpability and a death results proximately therefrom, the state has met its burden. Fry at ¶ 43 (discussing the same principle in terms of the felony murder statute); State v. Calise , 9th Dist. Summit No. 26027, 2012-Ohio-4797, 2012 WL 4897840, ¶ 72 (recognizing that felony murder and involuntary manslaughter both lack an independent mens rea component). Knowingly causing the death of another is the definition of murder, in which the legislature criminalized the conduct of knowingly killing another. R.C. 2903.02(A). The difference in culpability distinguishes the two crimes-murder criminalizes the conduct while involuntary manslaughter criminalizes the result.
{¶ 11} For the purposes of this appeal, we agree with Hill that no evidence demonstrated whether Hill knowingly caused the death of Mentor's brother or that he knew that Bulger would commit aggravated robbery leading to the death of Mentor's brother. Hill was not charged with murder, and the jury acquitted Hill of the robbery charges; therefore, Hill's argument is irrelevant. The issue is whether Hill knowingly sold or offered to sell controlled substances, an issue that has not been addressed in the appellate briefing by either party, and whether Hill's conduct in trafficking drugs created the foreseeable risk of the victim's death. App.R. 16(A)(7).
{¶ 12} The proximate cause determination is based on Hill's conduct. It is not necessary for the defendant to foresee or know of the exact consequences of his conduct. Id. "The consequences are foreseeable if what actually transpired was natural and logical of the defendant's conduct and was within the scope of the risk created by the defendant ." (Emphasis added.) Gibson , 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, at ¶ 36, citing Muntaser , 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, at ¶ 38. The focus of the proximate causation determination is on Hill's conduct and the foreseeable consequences of that conduct-that the death is foreseeable as a result of the aggravated robbery that Hill did not participate in is irrelevant. We have not been presented any arguments, from either side, with respect to whether the death of Mentor's brother was foreseeable because of Hill's aiding and abetting Mentor, who was never armed with a firearm when he sold controlled substances. App.R. 16(A)(7). Both parties focus on Hill's relationship and knowledge of Bulger's action, an issue the jury resolved against the state. In light of the lack of briefing, we cannot render a conclusion on that point. State v. Tate , 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21.
{¶ 13} With respect to the arguments challenging the weight or sufficiency of the evidence, Hill focuses on the failure to demonstrate Hill's participation or knowledge of the aggravated robbery. That argument is not based on the record and is also disregarded. Hill was acquitted of the aggravated robbery, which necessarily includes complicity to commit aggravated robbery. R.C. 2923.03(F). An appellant must present an argument that contains "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of *828 the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7) ; State v. Brown , 8th Dist. Cuyahoga No. 87932, 2007-Ohio-527, 2007 WL 416702, ¶ 13.
{¶ 14} The involuntary manslaughter conviction is based on drug trafficking. That discussion is rather limited. Hill first asks, "Is it foreseeable that every drug deal will result in an Aggravated Murder with a firearm?" In answering the rhetorical question, Hill asserts that "there is absolutely no evidence that [he] knew that Deon Bulger and his accomplice were going to commit aggravated robbery and/or aggravated murder." Again, if Hill had knowledge that Bulger intended to rob Mentor but nonetheless set up the drug deal, he would have been guilty of complicity to commit robbery. That argument necessarily implicates the acquittal, which ended in Hill's favor. Even so, if we considered Hill's conclusion to be true, which we must given the jury's verdict, it does not resolve the question of whether the victim's death was a proximate result of Hill committing the drug trafficking offense.
{¶ 15} The state attempted to address that question, claiming that "it is more often than not a drug dealer carries a firearm." According to the state, " '[e]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.' " State v. Bowers , 11th Dist. Trumbull No. 2016-T-0049, 2017-Ohio-2726, 2017 WL 1880821, ¶ 18, citing State v. Ogletree , 11th Dist. Portage No. 2005-P-0040, 2006-Ohio-6107, 2006 WL 3350764, ¶ 16. In light of the undisputed evidence that Mentor never carried a firearm while trafficking drugs, any reliance on Bowers appears misplaced.
{¶ 16} Without himself answering the question or responding to the state's argument, Hill argues, "assuming that the jury was properly instructed as to the underlying felony offense i.e. drug trafficking (which it was not) and was properly set forth in the jury verdict forms (which it was not)," that "there is absolutely no evidence that [he] knew that any of this would result in anyone's death." "Foreseeability is determined from the perspective of what the defendant knew or should have known, when viewed in light of ordinary experience." Gibson , 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, at ¶ 36, citing Muntaser , 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, at ¶ 38. Thus, Hill's entire argument presents the legal conclusion but no supporting analysis upon which we could reach that conclusion. App.R. 16(A)(7).
{¶ 17} The analysis provided instead focuses on Hill's belief that he cannot be convicted for involuntary manslaughter because the state failed to prove that Hill was complicit in Bulger's robbery. In light of the facts that Hill's participation in the robbery was not identified as the predicate offense for involuntary manslaughter and the jury determined Hill was not involved with the robbery, we overrule Hill's arguments challenging the sufficiency and the weight of the evidence. App.R. 16(A)(7). We could not reverse on the arguments presented, and we cannot undertake our own review of unbriefed issues.
{¶ 18} The conviction is affirmed.
EILEEN A. GALLAGHER, A.J., and TIM McCORMACK, J., CONCUR