[Cite as *State v. Owens*, 2019-Ohio-2221.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107494 |
| v. | : | |
| URSULA OWENS, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-615579-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anna M. Faraglia and Owen M. Patton, Assistant Prosecuting Attorneys, *for appellee.*

Timothy F. Sweeney, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Ursula Owens appeals her convictions for felony murder, with the predicate offense being felonious assault, and three counts of endangering children. Owens is serving an aggregate term of imprisonment of 25 years to life. The convictions are affirmed.

{¶ 2} Owens was engaged to, and cohabitating with, codefendant Tequila Crump.[1] Crump was the birth mother of the victim, who was approximately five years old at the time of her death. Previously, Crump was romantically involved with a woman in North Carolina. The couple had lived together for a short period of time. During that time, the other woman took responsibility for the victim and was ultimately granted legal custody of the child, but she was committed to providing Crump with the opportunity to stay in the victim's life. Sometime after that, Crump relocated to Cleveland and became engaged to Owens. The victim accompanied Crump, although the victim's legal guardian believed that Crump was not intending to permanently move to the Cleveland area. Crump and the victim moved in with Owens. There are two separate incidents giving rise to the convictions.

{¶ 3} In October 2016, the victim was admitted to the hospital for third-degree, deep tissue burns on her hand and wrist. Crump and Owens claim the child had been scalded with a hot water-soaked towel while washing her hands through a malfunctioning hot-water heater. It was claimed that the hot-water heater was not generally working, so the victim was unaware of the potential danger. Crump and Owens maintain that the victim somehow wrapped her wrist in the hot water-soaked towel causing the third-degree burns. Owens and Crump waited a full day before taking the child to the hospital. Although indicating that Owens and Crump's story was plausible, an investigation with children services was opened because the child

---

[1] Crump was convicted for crimes relating to the events herein and separately appeals in 8th Dist. Cuyahoga No. 107460.

needed multiple surgeries and skin grafts because of the severity of the burns. These facts led to the conviction against Owens for two counts of child endangerment, based on the injury itself and the failure to seek timely medical attention after the injury occurred.

{¶ 4} On March 17, 2017, the child was again admitted to the hospital, but she died as a result of a traumatic brain injury the morning following her admission. Owens's biological son ("son") was staying with Owens the night of March 16 through the following day. The son's friend was staying as well. On the morning of March 17, the boys woke to screaming and yelling coming from the victim's bedroom, which was directly across from the boys' room. The son testified to being able to see into the victim's room, although his disclosure did not occur immediately. At trial, the son testified to seeing Crump "pop" the victim four or five times on her arm. The son visibly demonstrated in court what the word "pop" meant, but the description is not evident from the written record. According to the boys, Owens told Crump "that's not how you do it." According to the son, Owens then punched the victim, picked her up, and threw her into the wall and then a dresser. Both boys testified to hearing two loud "thumps." The son explained that the two thumps were the victim hitting the wall and the dresser. By that time, the son's friend went to the door of their room and saw the victim on the ground with Owens standing over the victim, yelling. Crump was standing behind Owens, with Crump telling Owens something to the effect of "that's enough." The victim was not moving or making any noises. The son's friend asked the son if the victim had been "body slammed"

as the source of the two loud thumps.  Crump took the victim to her bedroom, placed the victim in Crump's bed, and tried to wake the victim.  The boys left the house at that point to get food at a nearby McDonald's.  Owens admitted to police officers that she pushed the victim, who then fell, but claimed the punishments were not that severe.

{¶ 5}  Crump and Owens waited over 12 hours to take the victim to the hospital, after conducting an online search about seizures in young children.  The couple claimed that the victim was having seizures throughout the morning and the afternoon and they read online that the best course of treatment was to allow the victim to sleep.  After the victim's pulse became noticeably weak, Crump finally called for emergency services late in the evening.  When the victim was first admitted to the hospital, Crump told the physician that the victim had one short seizure in the morning and no medical history of seizures.

{¶ 6}  The treating physician testified that the victim presented with a traumatic brain injury that in her experience could not be caused by a seizure.  By the time the victim was admitted to the hospital, there were no viable treatment options — the injury and swelling in the brain tissue was too severe.  The coroner determined that the death was caused by acute trauma, in part indicated by the existence of a severed blood vessel in the brain.  Owens presented an expert in her defense, who claimed that the severed blood vessel was caused by the autopsy itself.  The defense expert, Thomas William Young, M.D., claimed that the traumatic brain injury was caused by seizures the victim was experiencing the day she was admitted

to the hospital. According to Dr. Young, the victim's seizures caused a blood clot to form that cut the flow of blood to the victim's brain and that caused the child's death. Dr. Young was unable to explain the cause of the seizures. Upon taking the victim to the hospital, Crump told the treating physicians that the child had no history of seizures and that the child experienced one short seizure in the morning. After the victim died from her injuries, someone told an unknown member of the medical staff that the victim had been experiencing seizures repeatedly throughout the day.

{¶ 7} With respect to the March incident, Owens was convicted of felony murder under R.C. 2903.02(B), with the predicate offense being felonious assault, and child endangering for failing to seek immediate medical attention.

{¶ 8} In the first assignment of error, Owens claims that error occurred in failing to sever the counts pertaining to the separate abuse. Owens claims that permitting the jury to consider the October and March allegations in one setting prejudiced her right to a fair trial.

{¶ 9} Crim.R. 8(A) provides that "two or more offenses may be charged in the same indictment" if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Joinder is generally permitted to "conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661, citing *State v. Torres*, 66 Ohio St.2d 340, 343,

421 N.E.2d 1288 (1981). If offenses are properly joined under Crim.R. 8(A), the charges may be severed under Crim.R. 14 if the joinder will prejudice the moving party's rights. *Id.* In order to demonstrate prejudice, a defendant must affirmatively show that the evidence of the other crimes would not be admissible in the other trial if the counts were severed, and if the evidence would not be separately admitted, that the evidence of each crime is not simple and direct. *Schaim* at ¶ 42.

{¶ 10} Owens focuses on whether the evidence of the October burning incident would have been admissible under Evid.R. 404(B) in a separate trial on the March assault incident that led to the victim's death. We need not address this argument because even if we accepted her claim, solely for the sake of this discussion, the evidence for each incident was separate and direct. According to Owens, the state's purpose behind joining the two incidents in one indictment was to present the jury with highly prejudicial and inflammatory evidence to invite the jury to speculate that the March 2017 incident was assault and abuse.

{¶ 11} In *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 300, the Ohio Supreme Court addressed a similar argument, albeit one made in the context of an ineffective assistance of counsel claim for failing to seek severance of joined offenses. In *McKelton*, the defendant was charged with felonious assault and domestic violence for a May 2008 incident that resulted in the victim's broken ankle. *Id.* Two other counts charged the defendant with felonious assault and domestic violence that resulted in the victim's death and occurred in July 2008. *Id.* Both incidents were separate, but were related in that they

demonstrated a pattern of conduct of the same type of abuse the defendant committed against the victim. *Id.* Further, each incident was demonstrated with separate evidence that was not "rendered more complex or confusing" by joining the multiple counts together for one trial. *Id.*, citing *State v. Miller*, 105 Ohio App.3d 679, 692, 664 N.E.2d 1309 (4th Dist.1995).

{¶ 12} *McKelton* is instructive. In this case, the evidence demonstrating each instance of alleged abuse is demonstrated by separate and distinct evidence, and the evidence does not render the evidence of either offense more complex or confusing. Further, the jury acquitted Owens of the felonious assault charges associated with the October hot-water incident. Owens was only convicted of child endangering. This demonstrates the jury was capable of separately deliberating on the charged offenses without imputing criminal liability based on Owens being found guilty of murder for her later conduct. There is no error in the court's refusal to sever the trial, and the first assignment of error is overruled.

{¶ 13} In the second assignment of error, Owens claims the child endangering convictions for the hot-water incident are based on insufficient evidence "and/or" against the weight of the evidence based on the same arguments presented in the first assigned error. According to Owens, the "burn doctor" conceded that Owens and Crump's story of how the victim was injured was "plausible" and children services was not able to substantiate the abuse claim.

{¶ 14} Although Owens correctly identifies evidence that arguably weighs in her favor, she does so at the expense of the remainder of the evidence that proved

the child endangerment charges beyond a reasonable doubt. A claim that a jury verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. In light of the fact that Owens has not presented separate arguments in support of the claim that the conviction is based on insufficient evidence without consideration of the credibility or the weight of the state's evidence, we will solely address the arguments under the weight-of-the-evidence standard as presented. App.R. 16(A)(7); *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 2.

{¶ 15} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Generally, determinations of credibility and weight of the testimony are reserved for the trier of fact. *State v. Lipkins*, 2017-Ohio-4085, 92 N.E.3d 82, ¶ 36 (10th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶ 16} Under R.C. 2919.22(A), "no person, who is the parent * * * or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or

support." Under division (B)(1) of that statute, "no person shall * * * abuse the child" and if it is determined that the abuse results in serious physical harm, as the jury found in this case, the (B)(1) offense is a felony of the third degree. Owens does not contest her status as a person in loco parentis of the child victim. Further, there is ample evidence that the delay in providing the victim with immediate medical attention violated the parents' duty of care or protection. The evidence also demonstrated that the burns were deep tissue burns that would not have resulted from momentary contact with scalding water, but instead were intentionally inflicted upon the child. That conviction rests on circumstantial evidence, evidence of the same evidentiary quality as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). That there is some evidence upon which an acquittal could have rested is considered, but is not dispositive. Tellingly, Owens does not cite the relevant statutory sections or the standards of review underlying her arguments. App.R. 16(A)(7). The second assignment of error is overruled.

{¶ 17} In the third assignment of error, Owens claims that the evidence of the victim's older or remote injuries as noted by the coroner and the treating physician through the signs of healing, was inadmissible under Evid.R. 404(B). Those remote injuries occurred before or are unrelated to the October 2016 events. Neither Owens nor Crump were charged for crimes related to the remote injuries found by the treating physician and coroner. There is no evidence, or even an argument, that Owens caused the remote injuries.

{¶ 18} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The starting premise is that the state is introducing evidence of an act committed by the defendant to prove the defendant's propensity to commit the crime at issue. *State v. Stull*, 9th Dist. Summit No. 26146, 2012-Ohio-3444, ¶ 8 (evidence of a codefendant's other acts does not implicate Evid.R. 404(B) in the defendant's trial). In this case, there are no allegations or arguments that Owens caused the pre-October 2016 injuries discovered by the treating physician and the coroner. As Owens repeatedly emphasizes, there is no evidence even connecting those injuries to Owens. Although the state used those remote injuries to demonstrate that the child was generally subjected to abuse throughout her stay in Cleveland, the state never claimed those remote injuries were specifically caused by Owens. Evid.R. 404(B) is not implicated because the evidence was not introduced to prove Owens's character. *State v. Bulger*, 8th Dist. Cuyahoga No. 106516, 2018-Ohio-5346, ¶ 29, citing *State v. Wilson*, 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, ¶ 44. Owens has not presented any other argument to support the claim that the evidence was inadmissible. App.R. 16(A)(7). The third assignment of error is overruled.

{¶ 19} In the fourth assignment of error, Owens claims the trial court erred by not instructing the jury on reckless homicide as a lesser included offense to the felony murder count, charged under R.C. 2903.02(B). That argument is overruled.

**{¶ 20}** Owens is correct that reckless homicide was generally considered a lesser included offense of felony murder under R.C. 2903.02(B). *See, e.g., State v. Berry*, 8th Dist. Cuyahoga No. 83756, 2004-Ohio-5485, ¶ 48. In reaching this conclusion, it had been concluded that one cannot cause the death of another under R.C. 2903.02(B) without doing so recklessly. *See State v. Alston*, 9th Dist. Lorain No. 05CA008769, 2006-Ohio-4152, ¶ 48. The notion stems from the belief that R.C. 2903.02(B) was "silent as to an offender's mental state in the commission of 'causing of death of another'" and therefore the culpable mental state was "recklessness." *State v. Jones*, 8th Dist. Cuyahoga No. 80737, 2002-Ohio-6045, ¶ 77. According to that rationale, however, felony murder under R.C. 2903.02(B) would always be reckless homicide since they would share the same level of the offender's intent to cause the death of another under the interpretation in *Jones*. That interpretation of the "lesser included offense" analysis would have reckless homicide always swallow the offense of felony murder. Courts cannot interpret statutes in such a way as to render other provisions meaningless or inoperative. *State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 12. This analysis also has been overruled by implication.

**{¶ 21}** Felony murder under R.C. 2903.02(B) is considered a strict liability offense because it does not include a culpable mental state for causing another's death. *State v. Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016, ¶ 9; *State v. Day*, 8th Dist. Cuyahoga No. 83138, 2004-Ohio-1449, ¶ 50, *compare Alston* at ¶ 48 (felony murder under R.C. 2903.02(B) requires a "knowing" mens rea);

*Jones* (felony murder under R.C. 2903.02(B) requires a "reckless" mens rea). Felony murder is dependent solely on the death of the victim that is proximately caused by the commission or attempted commission of the predicate offense. *Nolan.* Under R.C. 2903.02(B), the General Assembly criminalized a result — that no person shall cause the death of another as a proximate result of committing a first- or second-degree felony offense of violence. There is no mens rea component. *State v. Hill*, 2018-Ohio-1401, 110 N.E.3d 823, ¶ 10 (8th Dist.) (discussing involuntary manslaughter, which is the equivalent to felony murder except for the degree of the predicate offense), citing *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43 (felony murder under R.C. 2903.02(B) contains no mens rea component). A defendant may be found guilty of felony murder under R.C. 23903.02(B) without having any intent to cause the victim's death. *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 31-33.

{¶ 22} An offense is considered to be a lesser included offense of another if (1) the "lesser" offense carries a lesser penalty than the greater one; (2) as statutorily defined, *the greater offense cannot ever be committed without the lesser offense also being committed*; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. (Emphasis added.) *State v. Deem*, 40 Ohio St.3d 205, 209, 533 N.E.2d 294 (1988). The test is stated in the conjunctive.

{¶ 23} Applying that test to felony murder under R.C. 2903.02(B) and reckless homicide under R.C. 2903.041(A), the "greater offense" of felony murder *can* be committed without the lesser offense having also been committed as both are

statutorily defined.  In *Nolan* at ¶ 9, the Ohio Supreme Court held that "the felony-murder statute [R.C. 2903.02(B)] imposes what is in essence strict liability.  Though intent to commit the predicate felony is required, intent to kill [or cause the death of another] is not."  *Id.*, citing *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 31-33; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43; *People v. Hernandez*, 82 N.Y.2d 309, 317, 604 N.Y.S.2d 524, 624 N.E.2d 661 (1993).  Under the Ohio Supreme Court's latest pronouncement, if a death is caused as a result of the offender's committing or attempting to commit any offense of violence that is a felony of the first or second degree, that offender has committed felony murder *regardless of any intent to actually cause the death of the victim. Id.*; R.C. 2903.02(B).

{¶ 24} In contrast, in order to be convicted of reckless homicide, the death of the victim has to be recklessly caused by the offender.  R.C. 2903.041(A).  The state must prove that the offender had some level of intent to cause the victim's death in support of that conviction.  Reckless homicide requires, at the minimum, "a heedless indifference to the consequences" and a "disregard" of a known risk in causing the death of the victim.

{¶ 25} That level of culpability is not necessary to proving felony murder under R.C. 2903.02(B).  *Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, at ¶ 31-33; *Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, at ¶ 43; *Nolan,* 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016, at ¶ 9.  The reckless homicide statute actually imposes a greater mental state with respect to causing the

death of the victim than does R.C. 2903.02(B).  For the purposes of whether reckless homicide is a lesser included offense of felony murder under R.C. 2903.02(B), an offender can indeed commit felony murder without having committed a reckless homicide because felony murder can be statutorily committed without any intent to cause the death of the victim.  As the Ohio Supreme Court explained, for example, "[i]f defendant knowingly caused physical harm to his wife by firing the gun at her through a holster at close range, he is guilty of felonious assault.  The fact that she died from her injuries makes him guilty of felony murder, regardless of his purpose." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 33.  Thus, even if the offender's action does not rise to the level of recklessly intending to cause the death of another, the offender can be guilty of felony murder under R.C. 2902.03(B), a strict liability offense.

{¶ 26} And, although it is conceivable that a reckless homicide could factually be found within the commission of felony murder, the standard under *Deem* focuses on the statutory definitions, not the factual possibilities.  Under *Deem*, as interpreted through the lens of *Nolan*, reckless homicide can no longer be considered a lesser included offense of felony murder under R.C. 2903.02(B).  The case law, concluding that reckless homicide is statutorily committed within every commission of a felony murder under R.C. 2903.02(B), has been overruled by implication.  *See Nolan*.  Our adherence to the case law as cited by Owens would necessarily force us to contradict the holdings in *Miller*, *Fry*, and *Nolan*.  We cannot rule as Owens suggests, nor does our decision create a conflict with the outdated

case law. The continued validity of the prior decisions must be considered in light of the holdings in *Miller*, *Fry,* and *Nolan*. Those cases are controlling authority, and unless the Ohio Supreme Court overrules its analysis therein, those cases remain controlling. The fourth assignment of error is overruled.

{¶ 27} In the fifth assignment of error, Owens claims that R.C. 2903.02(B) violates the independent-felony/merger doctrine. This argument is not novel. Generally, it is argued that a conviction for felony murder, with a charge of felonious assault as the predicate offense, violates the federal and state constitutions if Ohio were to adopt the so-called independent-felony/merger doctrine. *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 15. The doctrine recognizes that an offender should be convicted of felony murder only if the collateral, or predicate, felony offense was independent of the lethal act. Ohio appellate courts, including panels from this district, have rejected this argument. *Id.*, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, ¶ 107, *appeal not allowed*, 138 Ohio St.3d 1449, 2014-Ohio-1182, 5 N.E.3d 667, and *State v. Mays*, 2d Dist. Montgomery No. 24168, 2012-Ohio-838, ¶ 8; *State v. Pickett*, 1st Dist. Hamilton No. C-000424, 2001-Ohio-4022, *appeal not allowed*, 94 Ohio St.3d 1508, 764 N.E.2d 1037 (2002); *State v. Hayden*, 11th Dist. Lake No. 99-L-037, 2000 Ohio App. LEXIS 3198 (July 14, 2000), *appeal not allowed*, 91 Ohio St.3d 1522, 747 N.E.2d 249 (2001). We continue to adhere to the case law rejecting the independent-felony/merger doctrine in Ohio. The fifth assignment of error is overruled.

{¶ 28} In the sixth assignment of error, Owens claims she was denied her Sixth Amendment right to effective assistance of trial counsel because her attorney (1) failed to renew the motion to sever at the close of the state's case; (2) failed to object to the improper admission of the remote injuries the victim suffered under Evid.R. 403(B); and (3) failed to request or object to the trial court's omission of a jury instruction for the reckless homicide as a lesser included offense to the felony murder as charged under R.C. 2903.02(B).

{¶ 29} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial — which is defined as a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, the defendant has the burden of demonstrating both prongs of the test. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶ 30} We need not dwell on Owens's arguments. We have addressed all three issues on the merits and rejected each claim of reversible error. There is no error in the failure to sever the trials; the evidence of the victim's remote injuries was not improperly admitted under Evid.R. 404(B); and reckless homicide is not a lesser included offense of felony murder under R.C. 2903.02(B) according to *Nolan,*

141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016. Thus, Owens's trial counsel's performance was not deficient. The sixth assignment of error is overruled.

{¶ 31} In the seventh assignment of error, Owens claims her convictions "on Counts 1-2, 3, 4, and 5-9, for reckless homicide, murder, felonious assault, and endangering a child, all as to March 17, are based on insufficient evidence and/or are against the manifest weight of the evidence." According to Owens, there is no proof, much less that beyond a reasonable doubt, that Owens committed a felonious assault that proximately caused the victim's death because there were no visible injuries suggestive of an assault or abuse committed on the fateful day. Owens claims the son's testimony about seeing his mother body slam the victim into the wall and dresser was fabricated because he delayed his disclosure.

{¶ 32} Even without the son's eyewitness testimony, it is undisputed that Owens was in the room with Crump when the son's friend heard the crying and two loud thumps. The son's friend testified to hearing Owens tell Crump "that's not how you do it" after Crump "popped" the victim in the arm a few times and before the two loud thumps were audible. He also heard Crump tell Owens, "that's enough" after he heard two loud "thumps" that he believed were caused by the victim being body slammed based on his observations. It is undisputed that the victim was unresponsive immediately after the thumps were heard. The treating physician testified to the severity of the traumatic brain injury that she explained to have been caused by acute trauma and not by a seizure. Coupled with the coroner's conclusion as to the cause of death, there is sufficient evidence of Owens having committed a

felonious assault on the child that resulted in the victim's death. The seventh assignment of error is overruled.

{¶ 33} And finally, in the eighth assignment of error, Owens claims that the child endangering counts, as they pertained to the same date, are allied offenses of similar import. The only multiplicity with respect to the child endangering counts pertains to the events in October, the day on which the victim's hand sustained third-degree, deep tissue burns from the hot-water incident. The offenses relating to the physical abuse of the victim in March, the assault that led to the victim's death, were merged into the felony murder count and did not result in final convictions. The only surviving conviction for child endangering from the March incident was based on the failure to provide the victim with medical care following the physical abuse. As a result, the conviction for violating R.C. 2919.22(A) with respect to the March assault did not merge with Courts 1-8 dealing with the assault, as will be discussed in detail below. With respect to the October abuse, Owens was convicted of child endangering for failing to provide the child immediate medical attention and for physical abuse of the child under R.C. 2919.22(A) and (B). These crimes do not merge.

{¶ 34} Owens cites several cases in which the trial court merged child endangering offenses under R.C. 2919.22(A) with offenses under R.C. 2919.22(B). *See, e.g., State v. Bracy*, 9th Dist. Summit No. 28745, 2018-Ohio-2542, ¶ 2; *State v. Thompson*, 2017-Ohio-9044, 101 N.E.3d 632, ¶ 56 (7th Dist.); *State v. Henderson*,

7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-2816, ¶ 8.  Notably absent from each of the cited cases is any analysis.  These cases are unpersuasive.

{¶ 35} Under R.C. 2941.25, multiple sentences may be imposed if the conduct constituting the offenses is of dissimilar import, or if the conduct demonstrates that the crimes were committed separately or with a separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.  Two or more offenses are of dissimilar import if the conduct constituting the offenses involves separate victims or if the resulting harm of the two offenses is separate and identifiable.  *Id.* at paragraph two of the syllabus.

{¶ 36} In this case, Owens was convicted of child endangering under R.C. 2919.22(A) and (B) for physically abusing the victim and failing to provide timely medical care for the child after the child sustained severe, deep tissue burns from the hot water.  "The Ohio Supreme Court has similarly distinguished between the two types of child endangering by explaining that division (B) deals with affirmative acts of physical abuse whereas division (A) is concerned with circumstances of neglect[,]" an act of omission.  *State v. Esper*, 8th Dist. Cuyahoga No. 105069, 2017-Ohio-7069, ¶ 13, citing *State v. Kamel*, 12 Ohio St.3d 306, 309, 466 N.E.2d 860 (1984), and *State v. Sammons*, 58 Ohio St.2d 460, 391 N.E.2d 713 (1979).  In *Esper*, it was concluded that "[s]ubsection (A) defines the offense of neglect as the 'violation of a duty of care, protection, or support which results in a substantial risk to his health or safety.'"  *Id.*  "Subsection (B) of R.C. 2919.22, on the other hand, 'deals with

actual physical abuse of a child, whether through physical cruelty or through improper discipline or restraint.'" *Id.*

{¶ 37} Under *Ruff*, the two violations are based on separate conduct — affirmative abuse and the neglect, an act of omission. *See State v. Porosky*, 8th Dist. Cuyahoga No. 94705, 2011-Ohio-330, ¶ 11 (the affirmative act of abuse is separate from the act of omission in failing to get the child medical care). Each results in a separate identifiable harm or was committed with separate conduct. Either way, Owens's eighth and final assignment of error is overruled.

{¶ 38} The convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR