[Cite as *State v. Hughes*, 2021-Ohio-2764.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109563 |
| v. | : | |
| DANIEL HUGHES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 12, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636849-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney,
and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney,
*for appellee.*

Kevin M. Cafferkey, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant Daniel Hughes appeals his convictions for involuntary manslaughter and aggravated robbery. Hughes's convictions are based on sufficient evidence and are not against the manifest weight of the evidence. Hughes cannot

claim error in testimony he solicited at trial. The trial court's instruction on a defendant's flight was proper, and the record supported the trial court's imposition of consecutive sentences. For these reasons we affirm the convictions.

## I. FACTS AND PROCEDURAL HISTORY

### A. Procedural History

{¶ 2} On February 13, 2019, Daniel Hughes was indicted for aggravated murder in violation of R.C. 2903.01, aggravated robbery in violation of R.C. 2911.01(A)(3), kidnapping in violation of R.C. 2905.01(A)(3), murder in violation of R.C. 2903.02(B), and felonious assault in violation of R.C. 2903.11(A)(1), following the May 10, 2018 robbery and killing of Anthony Haas in East Cleveland, Ohio. Shannant Hamilton and Javonte Pressley were also indicted for their roles in Haas's murder.[1] Hughes's charges contained both one- and three-year gun specifications.

{¶ 3} On August 26, 2019, trial commenced for Hughes, resulting in a not guilty finding on the charge of aggravated murder and a hung jury on the remaining counts. A second trial commenced on January 16, 2020. The jury found Hughes

---

[1] In Cuyahoga C.P. No. CR-18-635762, Shannant Hamilton pleaded guilty to involuntary manslaughter with a one-year firearm specification and to one count of robbery. The trial court sentenced him to an aggregate 7 year prison sentence.

In Cuyahoga C.P. No. CR-19-636849, Javonte Pressley pleaded guilty to murder with a three-year firearm specification. The trial court imposed an aggregate prison sentence of 18 years to life in prison to be served consecutively to a 6 year prison sentence imposed in Cuyahoga C.P. No. CR-18-629210 on charges of robbery with a one-year firearm specification.

guilty of aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree, kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree, involuntary manslaughter in violation of R.C. 2903.04, a felony of the first degree, as a lesser included offense of murder, and felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The jury acquitted Hughes of all firearm specifications attendant to the counts.

{¶ 4} At sentencing, the state and Hughes agreed that the aggravated robbery charge and the kidnapping charge were allied offenses. The trial court found that the manslaughter and felonious assault charges were allied offenses. The state elected that the trial court impose sentence on the aggravated robbery and manslaughter charges. The trial court imposed an aggregate sentence of 18 years in prison, sentencing Hughes to an eight-year prison sentence for aggravated robbery to be served consecutively to a ten-year prison sentence for manslaughter.

## B. Facts Adduced at Trial

{¶ 5} On May 10, 2018, around 10:00 p.m., Anthony Haas was beaten, robbed, and shot to death in the city of East Cleveland. The testimony of these events given at trial indicated that Haas was to deliver marijuana to Hughes on Charles Road. Haas and Hughes had known each other since attending middle school together and attending the Job Corps after high school.

{¶ 6} Shannant Hamilton was also indicted for Haas's murder. He testified at trial after entering into a plea bargain with the state of Ohio. Hamilton testified he knew Hughes since he was 15 years old. On the day of the shooting, Hamilton

said Hughes contacted him to get together. After Hamilton got off of work, he went home, played a game, bought some marijuana, and later went to see Hughes on E. 114th Street. When Hamilton met Hughes, Javonte Pressley was with Hughes. The three were together for an hour or so before they went to Charles Road.

{¶ 7} When they arrived on Charles Road, Hughes talked with Carlito English, who lived on Charles Road. English testified that he knew Hughes and that he was with his father outside when he saw Hughes parked on the street in Hamilton's car with two other men. According to Hamilton's and English's testimony, Hughes told English to get off the street because something bad was going down so English went inside. Hamilton said that Hughes then used his phone to contact Haas, which contact was confirmed by telephone records obtained by the East Cleveland Police Department. Hamilton testified that Hughes also sent Haas their location from his phone so Haas could meet them. The three men waited for 25 minutes, and Hughes told Hamilton that he was going to "chalk him for his weed," meaning that he planned to take the drugs from Haas.

{¶ 8} Hamilton testified that when Haas arrived, he parked two houses away from his car. Hughes and Pressley got out of Hamilton's car and walked up to Haas's car. Hamilton said he proceeded to clean his car and noticed that Hughes was sitting in the passenger seat of Haas's car and Haas and Pressley were fighting by the driver's door. When Haas fell to the ground, Pressley was "thumping him." Hamilton went over to the car to try to stop Pressley from beating Haas. He got between them and as Hamilton got in front of Haas on the ground, Pressley pulled

out a gun. At that time, Hughes was going through the glove compartment and announced he "got" the weed. Hughes and Pressley proceeded to run away while Hamilton started to walk back to his car, leaving Haas on the ground. As Hamilton heard a gunshot coming from Hughes and Pressley's direction, he jumped into his car and pulled off.

{¶ 9} Rickett, a resident of Charles Road, testified that she saw three men beating up Haas after they pulled him out of his car. Haas was screaming and pleading for help when he was shot.

{¶ 10} English testified that about 5 minutes after Hughes told him to go inside, he went back outside toward the back of his house and heard a gunshot. He saw Hughes run up his driveway and exclaim that he was being shot at, and asked to be let in the house. English let him inside the house. After a half hour or so, English testified that Hughes borrowed a phone and called his mother to call for a ride. Hughes left the area in a car about 30 minutes later, never talking to the police that were on the street.

{¶ 11} The East Cleveland Police Department investigated the robbery and murder. They interviewed residents of Charles Road and developed suspects from telephone and Instagram records, identifying Hamilton and Hughes as suspects. An investigator from Ohio's Bureau of Criminal Investigation helped retrieve physical evidence, including Pressley's palmprint from the driver's side of Haas's car. They later recovered a pair of shoes from Hamilton's car. The shoe prints could not be excluded as a potential cause for the injuries to Haas's head.

{¶ 12}  An autopsy revealed that Haas died from a single gunshot wound fired from a distance of more than five feet.  Haas also suffered recent injuries to his head, hand, and arms, and bruising on his head.

## C.  Cross-Examination of Det. Sgt. Marche

{¶ 13}  East Cleveland Police Department Det. Sgt. Joseph Marche testified as to the details of East Cleveland's response to the 911 call regarding the shooting. East Cleveland was notified of the shooting at 10:15 pm. In reviewing Haas's telephone logs, police learned that Deontae Mahone contacted Haas at 10:01 pm. When contacted by police, Mahone cooperated immediately and made a statement. Det. Marche was cross-examined at trial about his interaction with Mahone.  When asked by Hughes's trial counsel about what Mahone knew about Haas's plans, the following testimony occurred:

> Q.    Yeah. So your information was per Mahones that Mr. Haas was headed over to Terrace, or was it Crystal Towers?
>
> A.    No, no. He didn't say the apartment building. I believe he just said he was headed to Terrace to meet D.J.

## D.  Jury Instructions on Consciousness of Guilt and Flight

{¶ 14}  At trial, the court gave instructions to the jury on complicity. The trial court also instructed the jury regarding flight of a defendant.  The court stated:

> Consciousness of guilt. Flight of defendant. Testimony has been admitted indicating that the defendant fled the scene. You are instructed that the fact that defendant fled the scene does not raise a presumption of guilt but it may tend to indicate that -- it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant fled the scene or if you find that some other motive prompted the defendant's conduct or if you

are unable to decide what the defendant's motivation was then you should not consider this evidence for any purpose; however, if you find that the facts support that the defendant engaged in such conduct and if you find that the defendant was motivated by a consciousness of guilt you may but are not required to consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight if any to give this evidence.

## E. Sentencing

{¶ 15} At sentencing, the trial court heard from Haas's family members, considered the presentence investigation report, and imposed a prison sentence of 8 years on the count of aggravated robbery and a prison sentence of 10 years on the count of involuntary manslaughter. In imposing sentence, the court noted that Hughes had several juvenile offenses, at least one of which was an offense of violence. The trial court found Hughes planned the robbery and was responsible for Haas's death, stating that it would not have happened had Hughes not arranged the robbery. The trial court further made the following findings:

> I find that a consecutive prison sentence is necessary to protect the community and to punish you and it's not disproportionate, and I find that the harm is so great or unusual that a single term does not adequately reflect the seriousness of your conduct, your criminal history shows that a consecutive sentence is necessary to protect the public, and I also find that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of your conduct.

{¶ 16} The trial court explained its reasoning for imposing consecutive sentencings as:

I've already placed on the record your participation in this senseless act of violence. You were the individual who set the wheels in motion, and as a result of your actions a life was lost. For that reason, a consecutive sentence is necessary. In addition to that, you have a lengthy history of crime in that you have a lengthy number of criminal offenses as a juvenile. So for those reasons, a consecutive prison sentence is necessary.

{¶ 17} The journal entry of Hughes's conviction contains the trial court's findings as to consecutive sentencing.

## II. LAW AND ARGUMENT

{¶ 18} Hughes raised five assignments of error. In his first and second assignments of error, Hughes alleges that his convictions are not based on sufficient evidence and are against the manifest weight of the evidence. In his third assignment of error he challenges the testimony of Det. Sgt. Marche as being improperly admitted as to statements made by Mahone. In his fourth assignment of error, Hughes argues that the trial court erred by instructing the jury on defendant's flight. Finally, in his fifth assignment of error, Hughes contends that although the trial court made the requisite findings in imposing consecutive sentences, the record does not support consecutive sentences.

## A. Sufficiency and Manifest Weigh of Evidence

## 1. Appellant's First and Second Assignments of Errors

{¶ 19} Hughes's first assignment of error reads, "Appellant's convictions are not supported by sufficient evidence." His second assignment of error reads, "Appellant's convictions are against the manifest weight of the evidence."

{¶ 20} As to his claim that the convictions were not based on sufficient evidence, Hughes argues that there was no evidence that Hughes caused or attempted to cause harm to Haas, rather he asserts that the testimony indicates Pressley and Hamilton physically engaged Haas and that Pressley acted alone when he shot and killed Haas.  Hughes further argues that even under a complicity theory, there was no evidence at trial that Hughes intended to hurt Haas.

{¶ 21} The state argues that the evidence at trial showed that Hughes supported, assisted, cooperated with, and shared the same criminal intent as the others in committing the offenses for which he was convicted by arranging the robbery, finding the items to be taken while Pressley beat up Haas, then fleeing the scene and hiding from the police in English's home.

{¶ 22} As to his claim that his convictions are against the manifest weight of the evidence, Hughes argues that Hamilton's testimony was untenable and could not be believed.  The state argues that Hamilton's testimony was corroborated by others' testimony as well as telephone records and other circumstantial evidence.  As such, the state argues that the jury did not lose its way in convicting Hughes and the evidence does not weigh heavily against conviction.

2.  **Standards of Review for Sufficiency and Manifest Weight of the Evidence Challenges**

{¶ 23} We review a challenge to the sufficiency of evidence by determining whether the evidence admitted at trial, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. The review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 24} In contrast, a challenge to the manifest weight of the evidence after a criminal conviction questions whether the state has met its burden of persuasion in obtaining the conviction. *Thompkins* at 390. Further, the manifest weight challenge raises factual issues:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

### 3. Hughes's Convictions Are Based Upon Sufficient Evidence and Are Not Against the Manifest Weight of the Evidence

{¶ 25} Hughes was convicted and sentenced on charges of aggravated robbery in violation of R.C. 2911.01(A)(3) and involuntary manslaughter in violation of R.C. 2903.04. Aggravated robbery is defined in R.C. 2911.01 in pertinent part as:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

{¶ 26} Involuntary manslaughter is defined in R.C. 2903.04(A) as "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

{¶ 27} In addition to the elements of these crimes and in accord with the testimony, the trial court instructed the jury on complicity. Ohio's complicity statute, R.C. 2923.02, provides in relevant part, that, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A) (2). This court has held:

> The statute does not define aiding and abetting, but the Supreme Court of Ohio has held that, to support a conviction for complicity by aiding and abetting, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. Furthermore,

"[s]uch intent may be inferred from the circumstances surrounding the crime." *Id.* at 246.

*State v. Williams*, 2019-Ohio-794, 132 N.E.3d 1233, ¶ 35 (8th Dist.). Further, the circumstances to be considered in assessing complicit behavior "may include the offender's presence, companionship, and conduct before and after the crime is committed." *State v. Crosby*, 8th Dist. Cuyahoga No. 106504, 2018-Ohio-3793, ¶ 12; *State v. Moore*, 7th Dist. Mahoning No. 02 CA 152, 2004-Ohio-2320, ¶ 31.

{¶ 28} Hamilton's testimony was corroborated in part by Rickett's and English's testimony as well as the telephone records obtained by the police. The testimony indicated that Hughes called Haas to meet him, that Hughes intended to rob Haas, and that Hughes warned English to leave the area. Further testimony indicated that while Pressley and/or Hamilton was fighting with Haas, Hughes went through the interior of Haas's car to find the drugs he said he would take. Hughes was involved in the planning and execution of the robbery in which force was used and serious physical harm caused. There was sufficient evidence that he acted to be both participating in and complicit in the aggravated robbery. As such, the testimony at trial was sufficient to sustain that conviction.

{¶ 29} Involuntary manslaughter requires a showing that a death ensued as a proximate cause of a commission of a felony. Hughes argues that the evidence did not show that Hughes acted with a criminal intent to cause harm; however the evidence did show that he actively participated in a robbery where serious physical harm was inflicted. "The culpability required for involuntary manslaughter is the

mens rea of the predicate offense." *State v. Hill*, 2018-Ohio-1401, 110 N.E.3d 823, ¶ 10 (8th Dist.), citing *State v. Brown*, 8th Dist. Cuyahoga No. 69149, 1996 Ohio App. LEXIS 2711, 10 (June 27, 1996). "'The proximate-cause element is satisfied when the accused sets in motion a sequence of events that makes the death of another a "direct, proximate, and reasonably inevitable consequence."'" *State v. Hill*, 8th Dist. Cuyahoga No. 106017, 2018-Ohio-4614, ¶ 11, quoting *State v. Marshall*, 175 Ohio App.3d 488, 2008-Ohio-955, 887 N.E.2d 1227, ¶ 53 (1st Dist.), quoting *State v. Lovelace*, 137 Ohio App.3d 206, 215, 738 N.E.2d 418 (1st Dist.1999).

{¶ 30} There was no dispute at trial that Haas died from a gunshot wound inflicted immediately after the robbery. Hughes argues that act was committed solely by Pressley. However, there was sufficient evidence to show that Hughes aided and abetted Pressley's and Hamilton's actions and the three men acted in concert and support of each other to commit the aggravated robbery. Further, we find the evidence is sufficient to determine that but for the aggravated robbery, Haas's death would not have occurred.

{¶ 31} Hughes argues that his conviction is against the manifest weight of the evidence because there was no DNA evidence presented at trial that implicated him in the crimes and as such, the conviction rested only on Hamilton's testimony that could not be believed. The weight and credibility to be given the evidence and those determinations are within the province of the jury. *State v. Hill*, 75 Ohio St.3d 195, 205, 1996-Ohio-222, 661 N.E.2d 1068. In this case, Hamilton's testimony was corroborated in part by other testimony and other evidence, which evidence

reasonably indicates that Hughes was involved in the planning and execution of the robbery. As such, we cannot say that the jury lost its way, or that the conviction created a manifest miscarriage of justice.

{¶ 32} Accordingly, the evidence was sufficient to sustain the conviction for involuntary manslaughter and the conviction was not against the manifest weight of the evidence and Hughes's first and second assignments of error are overruled.

## B. Jury Instructions

## 1. Appellant's Third Assignment of Error

{¶ 33} Hughes's third assignment of error reads, "The trial court erred in providing a jury instruction on flight." Hughes complains that the instruction was given in error as there was no evidence of intent to flee police and that the instruction, when viewed in conjunction with "weak and circumstantial" testimony at trial, inherently affected the trial. The state argues that the instruction was warranted under the circumstances of the case where Hughes used subterfuge and attempted to conceal his identity in leaving the scene of the crimes.

## 2. Standard of Review of Jury Instructions

{¶ 34} The trial court has discretion in fashioning jury instructions. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, citing *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993). We review the court's charge for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Bowman v. Cuyahoga Cty. Fiscal Officer*, 8th Dist. Cuyahoga No. 102492, 2015-Ohio-2866,

¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A flight instruction on consciousness of guilt based on the flight of the accused is appropriate if there is sufficient evidence presented at trial that the defendant attempted to avoid apprehension*." State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 49.

### 3. The Evidence Presented at Trial Warranted the Flight Instruction

{¶ 35} In this case, Hughes does not contest the content of the jury instruction, but questions the propriety of giving the instruction. He argues that the evidence did not warrant an instruction on flight. "[T]o warrant a flight instruction, it must be clear the defendant took affirmative steps to avoid detection and apprehension beyond simply leaving the scene of the crime." *State v. Holland*, 8th Dist. Cuyahoga No. 109416, 2021-Ohio-705, ¶ 25. "Flight in this context requires the defendant to appreciate that he [or she] has been identified as a person of interest in a criminal offense and is taking active measures to avoid being found." *Id.*, citing *State v. Ramos,* 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 28.

{¶ 36} The evidence presented at trial indicated that Hughes arranged for the robbery. After the robbery and shooting, testimony indicated that Hughes ran from the scene to hide in English's home, stating he was the one being shot at. Hughes then borrowed a phone and called someone else to arrange for a ride for him to leave the area. Further, Asha Lane, with whom Hughes has three children, testified that she became aware of an arrest warrant for Hughes, contacted him, and

encouraged him to turn himself in.  Hughes never turned himself in and was apprehended by U.S. Marshals six months later.

{¶ 37}  The evidence that Hughes ran from the robbery and shooting, used subterfuge to find haven, borrowed a phone, and then had someone else call a ride for him to leave, and was thereafter aware of an arrest warrant all support the propriety of the trial court's decision to give the flight instruction.  Because there was evidence that supported the trial court's decision, we cannot say the trial court abused its discretion in giving the flight instruction. Hughes's third assignment of error is overruled.

## C.  Admission of Hearsay Evidence

## 1.  Appellant's Fourth Assignment of Error

{¶ 38}  Hughes's fourth assignment of error reads, "The trial court erred and denied appellant due process under the Ohio and United States Constitutions by improperly admitting an out-of-court statement at trial." He argues that while on cross-examination, the state's witness, East Cleveland Police Det. Sgt. Marche was improperly permitted to testify as to Mahone's statements about Haas's plans.  The state argues that the testimony was responsive to questioning by Hughes's trial counsel on cross-examination and that any error was invited and Hughes cannot now complain about the introduction of the evidence.

## 2.  Standard of Review of the Admission of Evidence

{¶ 39}  The admission or exclusion of evidence is within the purview of the trial court and we review these decisions for an abuse of discretion. Hearsay is an

out-of-court statement that is offered to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally prohibited, unless such testimony is subject to an exception. Evid. R. 802. Where error in the admission of evidence was caused by the party complaining of the error, the party cannot benefit from the error on appeal. *State v. Jackson*, 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, ¶ 28, citing *State v. Woodruff*, 10 Ohio App.3d 326, 327, 462 N.E.2d 457 (2d Dist.1983).

**3. Invited Error**

{¶ 40} During cross-examination of Det. Sgt. Marche, trial counsel engaged in questioning with respect to the police investigation of Deontae Mahones. Det. Sgt. Marche testified that he interviewed Mahones about his meeting with Haas. On cross-examination, the following questions and answers took place.

Q.     And what time, if you were able to fix it, did that transaction occur with respect to the homicide?

A.     What transaction are you referring to, sir?

Q.     Well, the sale or whatever happened in the mini mart between Haas and Mahones?

A.     That was actually right -- it was right before. Because, you know, he told us where Anthony was going.

Q.     Okay. And that was in the area of Terrace.

A.      He actually — I want to say it was, I want to say it was Terrace at an apartment building, I believe he said.

Q.     And there's a very large apartment building up on the corner of Terrace and Taylor?

A.     There is, sir.

Q.      And is that where Crystal Towers is located?

A.      Yes, sir.

Q.      And Crystal Towers is a high-rise?

A.      It's a high-rise. I believe the address is 16000 Terrace, I think.

Q.      How many floors in that building?

A.       Oh, boy. There's got to be maybe 18 or 20 maybe.

Q.      Yeah. So your information was per Mahones that Mr. Haas was headed over to Terrace, or was it Crystal Towers?

A.      No, no. He didn't say the apartment building. I believe he just said he was headed to Terrace to meet D.J.

{¶ 41} Counsel objected to this last answer, and the trial court overruled the objection. We note that the statement complained of, "I believe he just said he was headed to Terrace to meet DJ," is hearsay. The witness testified to this statement made by Mahones as to what Haas told him, and the witness offered it to prove his assertion as to where Haas was going. Further, the witness corrected counsel's questioning that Haas was intending to go Terrace, not Charles Road.

{¶ 42} However, the introduction of the evidence may not be considered error if such error was invited. "The invited error doctrine prevents a party that causes error from taking advantage of such error on appeal." *State v. Jackson*, at ¶ 28. We have found that "the invited error doctrine is applied when counsel is 'actively responsible' for the trial court's error." *Id.*, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178.

{¶ 43} In this case, counsel pursued a line of questioning about Det. Sgt. Marche's knowledge of Mahone's knowledge of Haas's plans. Det. Sgt. Marche told counsel during questioning that Mahones told him what Haas said about where he was going. Knowing that, counsel continued to seek information about what Mahones said and objected only to the hearsay testimony after it was elicited. As counsel was aware and had warning that the witness possessed information, that the information was hearsay, and then directly elicited that information, Hughes cannot now complain about the introduction of the hearsay statement. Accordingly, Hughes fourth assignment of error is overruled.

## D. Consecutive Sentencing

## 1. Appellant's Fifth Assignment of Error

{¶ 44} Hughes's fifth assignment of error reads, "The trial court's imposition of consecutive sentences is clearly and convincingly not supported by the record and is therefore contrary to law." Hughes argues that the trial court erred by imposing consecutive sentences given his lack of adult felony criminal history and a criminal history with "only * * * a few juvenile offenses of violence." He further argues that the two offenses occurred in the same course of conduct, there was no separate harm caused by the two offenses, and that a single sentence would have addressed the seriousness of his conduct. The state argues that the trial court properly imposed consecutive sentences based on the record and circumstances of the cases because of Hughes's criminal history and the harm caused by his offenses.

## 2. Standard of Review and Imposition of Consecutive Sentences

{¶ 45} When imposing felony sentences consecutively, a trial court must make the findings in R.C. 2929.14(C)(4) and incorporate those findings in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. We review felony sentences pursuant to the standard found in R.C. 2953.08(g) and therefore "may increase, reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing if it 'clearly and convincingly finds' that the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law." *State v. Smith*, 8th Dist. Cuyahoga No. 108793, 2020-Ohio-3666, ¶ 18. A defendant may challenge the imposition in two ways: either the trial court failed to make the statutory findings required under R.C. 2929.14(C) or the record before the trial court does not support consecutive sentences. *Id.* at ¶ 19.

## 3. The Trial Court Properly Imposed Consecutive Sentences

{¶ 46} Hughes acknowledges that pursuant to R.C. 2929.14(C), the trial court made the findings necessary to impose consecutive sentences. However, Hughes claims that the record did not warrant the findings where Hughes did not have an adult felony record, but had a prior juvenile criminal history with only a "few offenses of violence." He argues that the harm caused by the robbery and eventual death of Haas were not so great or unusual as to require consecutive sentences, noting the greatest harm was the homicide offense for which a single prison sentence

on the conviction for involuntary manslaughter was sufficient punishment. In this case, the trial court made the requisite findings and further explained why it imposed consecutive sentences:

> I've already placed on the record your participation in this senseless act of violence. You were the individual who set the wheels in motion, and as a result of your actions a life was lost. For that reason, a consecutive sentence is necessary. In addition to that, you have a lengthy history of crime in that you have a lengthy number of criminal offenses as a juvenile. So for those reasons, a consecutive prison sentence is necessary.

{¶ 47} The trial court's reasons underlying its decision to impose consecutive sentences is supported by the record. The trial court emphasized the egregious conduct that led to Haas's killing during the robbery, noting that but for Hughes actions Haas would not be dead. Because we are able to discern that the trial court engaged in the correct, requisite analysis and the record contains evidence to support the finding, we must uphold the sentence. *State v. Rodriguez*, 8th Dist. Cuyahoga No. 108998, 2020-Ohio-4464, ¶ 26. Accordingly, Hughes's fifth assignment of error is overruled.

## III. CONCLUSION

{¶ 48} We affirm Hughes's convictions because they are based on sufficient evidence and are not against the manifest weight of the evidence. We find that the trial court properly instructed the jury on flight of a defendant and that Hughes cannot claim error in the introduction of hearsay testimony he solicited. Further, the trial court properly imposed consecutive sentences.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EMANUELLA D. GROVES, J., CONCUR