[Cite as *State v. Peterson*, 2024-Ohio-2903.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff- Appellee,                        :

                          No. 113089

        v.                                         :

ALEXANDER PETERSON,                        :

    Defendant-Appellant.                      :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664324-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Caroline Maver and Halie Turigliatti, Assistant Prosecuting Attorneys, *for appellee.*

Robey & Robey and Gregory Scott Robey, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant Alexander Peterson appeals his convictions for two counts of rape, one count of gross sexual imposition, and one count of

endangering children.  Because the verdicts were based on sufficient evidence and not against the manifest weight of the evidence, and the trial court did not abuse its discretion in admitting certain evidence, we affirm Peterson's convictions.

PROCEDURAL HISTORY AND RELEVANT FACTS

Procedural History

{¶ 2} Peterson was indicted on October 18, 2021, for two counts of rape, violations of R.C. 2907.02(A)(2), felonies of the first degree; one count of gross sexual imposition, a violation of R.C. 2907.05(A)(1), a felony of the fourth degree; and one count of endangering children in violation of R.C. 2919.22(B)(1), a felony of the second degree.  His jury trial began on  June 29, 2023, and on July 3, 2023, the jury returned verdicts of guilty on all counts in the indictment.  On July 18, 2023, the trial court imposed an aggregate prison sentence of 30 years, sentencing Peterson to 11 years in prison on each count of rape and 8 years on the count of endangering children, and ordered those sentences to be served consecutively.  It also sentenced Peterson to 18 months in prison on the gross sexual imposition count, ordering that sentence to be served concurrently to the other sentences.

Testimony Presented at Trial

{¶ 3}   Peterson married N.O., and became stepfather to N.O.'s daughter S.O., the victim named in his indictments.  Peterson and N.O. also had two daughters together.   S.O. testified she first met Peterson when she  was in fourth grade.  Peterson became a father figure to her; he took her to movies, dinners, and on drives.  During the summer before S.O. began the eighth grade, S.O. was home

alone with Peterson because her mother and sisters were out of town. S.O. went to Peterson's bedroom to talk to him about her phone. Peterson asked S.O. if she knew what a urethra was. She responded she did not know, and he proceeded to place his hand down her pants and underneath her underwear. S.O. testified that Peterson touched her between the lips of her vagina and digitally penetrated her. S.O. said she did not know how to respond, so she did not leave.

{¶ 4} Peterson also told S.O. that he wanted to show her what cunnilingus was and performed oral sex on her. He digitally penetrated her while doing so. He asked her to masturbate him until he ejaculated. When Peterson tried to kiss her, she told him his breath stunk and that she would not kiss back. During the incident, S.O. stated that Peterson said, "[I]t would be hard for guys in the future to make me cum because I was taking so long to." Peterson also removed his pants and forced S.O. to stroke his penis. She testified the incidents took the majority of the day and that when Peterson was done, he left for work.

{¶ 5} After N.O. came back from her trip, S.O. did not tell her what happened because she was afraid of splitting up her family. Three years later, S.O. was at her grandparent's house for a sleepover with her cousin J.-A. S.O. woke up from a nightmare, and when her cousin asked what caused the nightmare, S.O. disclosed what happened. S.O. did not want to go home. J.-A. testified at trial as to when and how S.O. disclosed the sexual assault to her. When S.O. did go home after the disclosure, she had an argument with her mother. During the argument, S.O. told her about the assault. N.O. did not take her to the police, but told S.O. she would

ask Peterson about the incident. The next day, N.O. and S.O. confronted Peterson. S.O. testified that Peterson said, "I'm sorry you feel that way. It was a learning experience."

{¶ 6} S.O. then went to live with her grandmother. Her uncle, J.O., learned about the assault and took her to the police station to file a report. N.O. did not support the police involvement and tried to convince S.O. to lie to a social worker who was investigating the allegations. N.O. wanted S.O. to take back the allegations she made about Peterson. S.O. admitted that she attempted to take back the allegations, but that she only did so because of her mother. However, S.O. told the social worker about the assault. At the time of trial, N.O. was not speaking with S.O. and would not let S.O. speak to her sisters.

{¶ 7} North Olmsted Police Detective Kenneth Vagase was assigned to investigate S.O.'s allegations. He testified that in his experience, every victim of sexual assault reacts differently. He explained that children have varied reactions and said that in his 25 years of experience, it was not uncommon for children to report an assault years later. As to N.O., Detective Vagase noted she was not supportive of her daughter and was not cooperative with his investigation.

{¶ 8} Cuyahoga County Division of Children and Family Services social worker Christine Lee interviewed S.O. regarding the allegations. In her testimony, Ms. Lee noted that children disclose sexual assault in different ways. She stated children may delay disclosure of a sexual assault because they fear getting into

trouble, they think they did something wrong, or they may fear disclosure would change the family's dynamic. Ms. Lee referred S.O. for trauma-based therapy.

## Evidentiary Rulings at Trial

{¶ 9} During Detective Vagase's testimony, he authenticated a recording of a phone call he had with N.O. Peterson's trial counsel objected to the tape on the grounds that it was hearsay. The State argued that the call was not being introduced for the truth of the statements made, but to illustrate the process of the investigation and to explain the reason for Detective Vagase's actions. The trial court overruled Peterson's objections and allowed the tape to be played. During the conversation, N.O. indicated she did not believe the allegations, wanted the investigation to stop, and did not provide Detective Vagase with contact information for others who may have knowledge pertinent to his investigation. Detective Vagase also testified that N.O. later made a written statement to police indicating she wanted the investigation to stop.

{¶ 10} During Ms. Lee's testimony, she testified she had nine years of experience and was trained in forensic interviewing of children. When she testified as to why some children may be afraid to disclose sexual abuse, Peterson's counsel objected and argued Ms. Lee was not qualified as an expert who would be entitled to testify as to an opinion. The trial court overruled the objection.

## Sentencing

{¶ 11} Before imposing sentence, the trial court clarified that there were multiple offenses committed during Peterson's course of conduct. When imposing

consecutive sentences, the trial court noted that Peterson was defiant, had not apologized, and showed no remorse. Because of this, the trial court stated that consecutive sentences were appropriate to the potential danger he posed to other children. Further the trial court noted Peterson was in a position of trust and violated that trust with the children. The trial court found consecutive sentences necessary to protect the public from future crime and consecutive sentences were not disproportionated to the seriousness of Peterson's conduct. In giving its reasons for imposing consecutive sentences, the trial court noted the harm caused to the victim by the violation of her trust and noted the danger posed by Peterson to the public. In the journal entry of conviction, the trial court memorialized its findings.

## LAW AND ARGUMENT

### The Convictions Were Based on Sufficient Evidence and Were Not Against the Manifest Weight of the Evidence

{¶ 12} Peterson's first and second assignments of error read:

1. The state failed to present sufficient evidence to support criminal convictions of Appellant, resulting in substantive and procedural due process violations.

2. The convictions of Appellant are against the manifest weight of the evidence presented and said convictions must be vacated.

{¶ 13} Peterson asserts his convictions were based on insufficient evidence and were against the manifest weight of the evidence. He argues that the evidence was insufficient to sustain the convictions because S.O. did not report the incident for three years, she continued to live with Peterson after the assault, S.O. tried to revoke her statements, S.O.'s testimony regarding the duration of the incidents in

question is against common sense, and the police did not fully investigate the allegations because they did not take statements from S.O.'s relatives or view the crime scene. He reiterates these arguments in making his manifest weight challenge.

{¶ 14} We review challenges to the sufficiency of evidence to determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. Our review is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380.

{¶ 15} In contrast to a claim the evidence is insufficient, a manifest weight challenge to a conviction asserts the State has not met its burden of persuasion in obtaining the conviction. *Id.* Such a challenge raises factual issues and our review is as follows:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The

> discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. A victim's testimony alone is sufficient to sustain a conviction; there is no requirement that a rape victim's testimony be corroborated. *State v. McSwain*, 2017-Ohio-8489, ¶ 34 (8th Dist.), citing *State v. Blankenship*, 2001 Ohio App. LEXIS 5520 (8th Dist. Dec. 13, 2001). Further, a rape conviction obtained without corroborative evidence does not necessarily render the conviction against the manifest weight of the evidence. *State v. Wilk*, 2022-Ohio-1840, ¶ 63 (8th Dist.)

{¶ 16} Peterson was convicted of two counts of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), and one count of endangering children in violation of R.C. 2919.22(B)(1). As to the rape counts, the State was required to present evidence that Peterson engaged in sexual conduct with S.O. when he purposely compelled S.O. to submit by force. As to the count of gross sexual imposition, the State was required to present evidence that Peterson had sexual contact with S.O. by force or threat of force. As to sexual conduct, S.O. testified that Peterson digitally penetrated her and performed cunnilingus. As to sexual contact, S.O. testified that Peterson

made her masturbate him.  Regarding the element of force, the Ohio Supreme Court has held that

> [t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other.  With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.

*State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus, citing *State v. Labus*, 102 Ohio St. 26, 38-39 (1921).

{¶ 17} S.O. testified that Peterson engaged in acts of sexual conduct and contact with her.  She further testified that she was 12 to 13 years of age, Peterson was her stepfather, and he was larger than her.  Accordingly, the State presented evidence sufficient to sustain the convictions for rape and gross sexual imposition.

{¶ 18} As to the child endangering count, the State was required to present evidence that Peterson committed an affirmative act of abuse of a child under 18 years of age recklessly or with heedless indifference to the consequences of the act. *State v. Miller*, 2023-Ohio-1141, ¶ 39  (8th Dist.).  Further, the State was required to present evidence that the abuse resulted in serious physical harm to the child. *See* R.C. 2919.22(E)(2)(d) (elevating offense to second-degree felony.).  "The rape of a child is a form of child-sexual abuse." *State v. D.S.*, 2021-Ohio-1725, ¶ 56 (8th Dist.).  Moreover, in addition to any physical trauma suffered by S.O., S.O. further testified she suffered psychological injury.  As such, the State presented sufficient evidence as to each element of the offense of child endangering.

{¶ 19} Peterson's arguments as to sufficiency of the evidence presented at trial questions S.O.'s testimony and the quality of the police investigation, but these arguments do not negate S.O.'s testimony that went to each element of each offense. As such, the State presented sufficient evidence to sustain the convictions and the second assignment of error is overruled.

{¶ 20} Regarding the manifest weight challenge to his convictions, Peterson alleges that the delayed disclosure and the fact S.O. lived with him for three years goes against her credibility. This court has held that a delayed disclosure of sexual misconduct by a minor victim does not render a conviction against the manifest weight of the evidence. *State v. Harris*, 2018-Ohio-578, ¶ 53 (8th Dist.). As to S.O.'s credibility, although S.O. waited three years to report the incident, there was testimony such delay was not atypical for child victims when disclosing instances of sexual assault, to include fear the impact of disclosure would have on the child's family. *Id*. at ¶ 18 (The child victim delayed disclosing sexual assault against her for fear of her brother's well-being.). Further, the fact S.O., a 12- to 13-year old child, continued to live with her mother and stepfather does not undermine her credibility, especially where Peterson has not pointed to evidence S.O. had the ability during those three years to dictate where she would live. Peterson also argues S.O.'s credibility was in question because she attempted to revoke her allegations to the police. However, there was evidence her mother, N.O., pressured her to do so. As to the argument regarding S.O.'s testimony as to when the acts occurred, it was not so incredible as to undermine the weight of her testimony that those acts did occur.

Finally, as to the investigation, Detective Vagase detailed the steps he took to interview S.O.'s uncle and cousin and that N.O. was not cooperative. Accordingly, we cannot say that the evidence weighs heavily against conviction or that the jury lost its way and that a manifest miscarriage of justice has occurred. *Thompkins*, 78 Ohio St.3d 380, at 387.

{¶ 21} The first and second assignments of error are overruled.

### The Trial Court Did Not Abuse Its Discretion by Allowing Evidence of the Victim's Mother's Phone Call With Police

{¶ 22} The third assignment of error reads:

3. The trial court erred when it permitted the state to play a recorded call of the alleged victim's mother in violation of Appellant's 6th Amendment right to confront his accusers.

{¶ 23} Peterson argues the jury should not have heard the tape of the call between Detective Vagase and N.O. because it denied him the right to confront N.O. as to her statements. The State argues that the taped call was properly admitted because the tape was played to explain the investigation. The State asserts that because the call was not played with the intent to offer it for the truth of the statements therein, it did not violate Peterson's U.S. Const., amend. VI right to confront witnesses.

{¶ 24} "The Sixth Amendment to the United States Constitution provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *State v. Pasqualone*, 2009-Ohio-315, ¶ 11. The Confrontation Clause is implicated only by testimonial evidence. *State v.*

*McKelton*, 2016-Ohio-5735, ¶ 185. "[T]estimonial statements are those made for 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, (2011).

{¶ 25} The decision to admit or exclude evidence is reviewed for an abuse of discretion. *State v. Hughes,* 2021-Ohio-2764, ¶ 39 (8th Dist.). In this case, the contents of the call indicated N.O. did not want the investigation to continue and did not cooperate fully with police. "A law-enforcement officer can testify about a declarant's out-of-court statement for the nonhearsay purpose of explaining the next investigative step." *McKelton*, 2016-Ohio-5735, at ¶ 186, citing *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). The testimony is admissible if it is both non-testimonial and

> 1) "the conduct to be explained [is] relevant, equivocal, and contemporaneous with the statements," (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) "the statements cannot connect the accused with the crime charged."

*Id.*, quoting *State v. Ricks*, 2013-Ohio-3712, ¶ 27.

{¶ 26} In this case, the call was not testimonial; it explained the investigation and those steps Detective Vagase took as well as explaining steps not taken. Further, the call indicated N.O.'s failure to cooperate with or support the investigation. N.O. did not inculpate Peterson in the crimes charged. S.O. testified as to N.O.'s lack of support and the pressure put on her to recant her accusations. The jury heard S.O.'s testimony prior to hearing the call, and we cannot say the probative value of the call

was substantially outweighed by the danger of unfair prejudice. *See State v. Lowe*, 2023-Ohio-1747, ¶ 74 (8th Dist.) (jury heard statements from other witnesses prior to police officer's testimony).

{¶ 27} Accordingly, we cannot say the trial court abused its discretion by allowing the call to be played to the jury and the third assignment of error is overruled.

### The Trial Court Did Not Abuse Its Discretion by Allowing Social Worker to Testify About the Manner Children Disclose Assaults

{¶ 28} Peterson's fourth assignment of error reads:

4. The trial court erred when it permitted the social worker to give expert opinion testimony for the state, without being properly qualified as an expert witness.

{¶ 29} Peterson argues that Ms. Lee, who was not qualified as an expert witness, gave expert opinion testimony regarding how children disclose sexual assaults. The State argues that the trial court did not abuse its discretion because Ms. Lee's testimony was admissible pursuant to Evid.R. 701.

{¶ 30} Evid.R. 701 provides that

[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶ 31} We have found that a trial court may allow a social worker to testify to the general manner in which children disclose sexual abuse so long as no opinion is offered as to the truth of the victim's statements. *State v. Mathis*, 2019-Ohio-

3654, ¶ 61 (8th Dist.) (testimony from a social worker regarding the manner which sexually abused children disclose found admissible), *State v. Marshall*, 2022-Ohio-2666, ¶ 23 (8th Dist.) (social worker allowed to testify as a lay witness about experience with delayed reporting of sexual abuse), *State v. Sellers*, 2022-Ohio-581, ¶ 30 (11th Dist.), *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 110-111 (2d Dist.) (detective's testimony regarding children's delayed disclosure of sexual assault admissible under Evid.R. 701).

{¶ 32} Ms. Lee testified as to her experience and the manner in which children disclose sexual assaults. Her testimony was that it is not uncommon for children to delay disclosure, and she gave examples of why children can delay disclosure. She did not offer an opinion as to the truth of S.O.'s allegations. As such, we cannot say the trial court abused its discretion by allowing Ms. Lee's testimony and the fourth assignment of error is overruled.

Consecutive Sentences Were Properly Imposed

{¶ 33} Peterson's fifth assignment of error reads:

5. The trial court erred when it imposed maximum consecutive sentences on count one, two, and four, which are not supported by the record.

{¶ 34} Peterson argues that consecutive sentences were not supported by the record and the trial court did not make the necessary findings when imposing consecutive sentences. The State contends that the record supports the sentences imposed and the trial court did make the findings required by R.C. 2929.14(C).

{¶ 35} A trial court may impose consecutive sentences if it makes the findings enumerated in R.C. 2929.14(C), which reads:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

When imposing consecutive sentences, the trial court is not required to recite the statutory language, nor is it required to state the reasons that support its findings where such support may be found in the record. *State v. Percy*, 2024-Ohio-664, ¶ 10 (8th Dist.). In cases in which the trial court makes the appropriate findings to imposed consecutive sentences, "our review of the record is limited to determine whether the record clearly and convincingly does not support the imposition of

consecutive sentences." *State v. Hoffman*, 2023-Ohio-3977, ¶ 35 (8th Dist.), citing R.C. 2953.08(G).

{¶ 36} The trial court did not recite all of the consecutive sentencing findings verbatim. It did find "that consecutive sentences are necessary to protect the public from future crime," they "are not disproportionate to the seriousness of the offender's conduct," and in discussing the course of conduct found that "consecutive sentences are not disproportionate to the danger the offender imposes to the public." As such, the trial court made the initial findings contained in R.C. 2929.14(C).

{¶ 37} Further, the trial court discussed the course of conduct and reasons why it imposed consecutive sentences. It noted the extent of the harm caused to S.O. by the violation of her trust and the circumstances S.O. suffered because of N.O.'s lack of support for her daughter. The trial court stated the dangers Peterson posed to the public and explicitly reiterated its finding that consecutive sentences were necessary to protect the public. Although the trial court did not state verbatim the language of R.C. 2929.14(C)(b), the trial court's statement of its reasons and findings supports finding that the "harm caused was so great or unusual that no single prison term . . . adequately reflects the seriousness of the offender's conduct," which finding was included in the journal entry of convictions. Additionally, in reviewing the record, we cannot say the record clearly and convincingly does not support the imposition of consecutive sentences.

{¶ 38} The fifth assignment of error is overruled.

## CONCLUSION

{¶ 39} Peterson's convictions were supported by sufficient evidence through the testimony of the victim. The convictions were not against the manifest weight of the evidence where the victim delayed disclosure after three years and was at an age where she could not leave the home and the testimony was not so incredible as to undermine the weight of her testimony that Peterson committed the acts for which he was convicted. The trial court did not abuse its discretion by allowing a recording of the victim's mother to be played because it was nontestimonial hearsay not offered for the truth of the statements. The trial court further did not abuse its discretion by allowing a social worker to testify as to the manner in which child victims disclose sexual assaults and their reasons for delaying disclosure. Finally, the trial court made the findings to impose consecutive sentences and it cannot be said that the record clearly and convincingly does not support the imposition of consecutive sentences.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR