[Cite as *State v. Johnson*, 2025-Ohio-2770.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                     :

    Plaintiff-Appellee,          :

                                    No. 114389

    v.                           :

ANTONIO D. JOHNSON,                :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 7, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681722-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora Bryan, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Antonio D. Johnson appeals his convictions following a jury trial. For the reasons that follow, this court affirms.

## I. Procedural History

{¶ 2} In 2023, the State named Johnson in a five-count indictment, charging him with three counts of rape, in violation of R.C. 2907.02(A)(1)(b) (Counts 1, 2, and 3), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) (Counts 4 and 5). Each rape count included a furthermore clause that the victim was less than ten years of age, and all counts included a sexually violent predator specification ("SVP specification").

### A. Jury Trial

#### 1. Johnson's Abuse Is Discovered

{¶ 3} In 2023, the victim, then age nine, told her mother that Johnson, mother's boyfriend and father to two of mother's children, had touched her breasts. Despite working with children who often suffered from trauma, mother admitted that she was unsure whether to believe her daughter. She stated that Johnson denied the accusation but demonstrated to her that he merely closed the victim's shirt to cover her breasts, stating "[L]ittle girls should not be walking out like that." Because of the victim's disclosure, mother purchased home-security cameras and placed them in her bedroom, the children's bedroom, and the living room. She explained that she purchased the cameras because she "wanted to know for herself because she really did not know for sure." Mother admitted, however, that she did not purchase any software to record any footage from the cameras but that she could only view the cameras in real-time from her cell phone. She further admitted that she did not hide the placement of the cameras.

{¶ 4} Mother testified that on March 21, 2023, she was watching the security cameras on her cell phone while in her car parked in the driveway. She stated that she noticed the victim was no longer seated at the dining room table. When mother entered her house, she discovered the bathroom door was closed. When she opened the door, she found the victim seated on the toilet with her pants down and Johnson at the sink washing his hands. According to mother, the victim looked "sad and worried" and "about to cry" and Johnson told her that the victim "had to use the bathroom really bad and could not hold it." The victim also stated that she had to use the bathroom. Johnson denied doing anything to the victim.

{¶ 5} Despite Johnson's denial, mother immediately took the victim to the East Cleveland Police Department to file a report. Corporal LaTasha Moore testified that on March 21, 2023, she took a report from the victim and her mother in the lobby of the police station. According to Corporal Moore, the victim appeared "sad, scared, and overwhelmed" as she disclosed that Johnson had been fondling and touching her. The jury observed Corporal Moore's body-camera footage that recorded both mother's and the victim's demeanor, including the victim crying. According to Corporal Moore, mother expressed regret for not reporting this conduct earlier.

## 2. The Victim Testifies About the Abuse

{¶ 6} The victim, age 11, testified that Johnson first touched her "in nasty ways" when she was eight years old. She stated that Johnson touched her vagina and breasts, and then vaginally and anally raped her "every day" from when she

was eight years old until she was age ten. The victim said that these assaults occurred in both her mother's bedroom and her bedroom, which she shared with her brothers. She stated that Johnson threatened her with both a gun and a knife, stating that he would kill her if she told. The victim explained that when these assaults occurred, "it hurt . . . felt weird like her stomach started hurting."

{¶ 7} The victim testified that because she was scared, she initially told her mother that Johnson was just touching her. She said she felt sad when her mother did not believe her, but explained that even when her mother installed the cameras, Johnson would unplug them. She explained that on Johnson's birthday, while her mother went to pick up the cake, Johnson pulled her pants down in her bedroom and put a pink "microphone" in her vagina. She identified State's exhibit No. 31 as a photograph of the pink "microphone." The victim stated that although she was crying during this assault, Johnson told her to "stop being disrespectful." She stated that as a result of the assault, she began bleeding and received her "period" for the first time. The victim testified that the sexual assaults continued thereafter but the final incident occurred when her mother discovered Johnson in the bathroom with her. She stated that while she was using the bathroom, Johnson touched her breasts under her shirt.

{¶ 8} During mother's testimony, it was revealed that the "microphone" that the victim described and identified was actually mother's pink vibrator that she kept in her nightstand drawer. Mother identified State's exhibit No. 31 as the photograph that she took of the sexual device.

### 3. The Investigation

{¶ 9} East Cleveland Detective Treasa Kennedy testified that she was assigned the victim's report on March 22, 2023. She stated that she contacted Cuyahoga County Division of Children and Family Services ("CCDCFS") to connect with the family. Detective Kennedy stated that on March 27, 2023, she received a letter from mother wanting to "cancel the report," explaining that the entire incident was a "misunderstanding" and an "overreaction." She stated that she marked the letter into evidence, but the investigation moved forward, and she finally connected with mother on March 30, 2023, to schedule an interview with the victim.

{¶ 10} Mother testified that she sent the letter asking that charges not be pursued because she was nervous and still unsure of the allegations since one of her sons told her that Johnson did not abuse the victim. She said that she did not want her children taken away from her and that she was scared of Johnson.

{¶ 11} Renee Jackson, a child protection specialist at CCDCFS, testified that on April 17, 2023, she conducted and recorded a forensic interview with the victim; Detective Kennedy watched the interview from a monitor. The jury observed and listened to the interview in which the victim disclosed that Johnson sexually abused her. Jackson admitted that during the interview, the victim did not make any disclosures regarding the frequency of Johnson's sexual abuse, i.e., every day from age eight until age ten, or that the abuse was more than vaginal penetration. She further stated that mother did not make the other children in the

home available for interviewing, which she would typically conduct as part of her investigation.

{¶ 12} As a result of the disclosures, Jackson recommended that the victim receive a sexual-assault physical examination. Additionally, the victim was removed from her mother's care and placed in the temporary custody of the victim's paternal grandmother.

{¶ 13} On April 18, 2023, Kathleen Hackett, pediatric forensic coordinator at UH Rainbow Babies & Children's Hospital, testified that she was the sexual assault nurse examiner who conducted the victim's physical examination. During her testimony, Nurse Hackett read the narrative provided to her by the victim in which the victim stated that Johnson began sexually assaulting her around the age of nine, with the most recent sexual assault occurring about a month ago. The narrative and notes described the abuse suffered by the victim — Johnson put his penis in her vagina and anus, inserted a pink "microphone" in her vagina, threatened her with a gun, and choked her.

{¶ 14} Nurse Hackett testified about the photographs she took of the victim during the exam, explaining she observed non-acute transections of the victim's hymenal tissue at the 4 and 8 o'clock positions. She testified that she noted these gaps in the hymenal tissue because they were "abnormal," thus "confirming sexual abuse or sexual assault according to research and studies." Over objection, Nurse Hackett continued, stating that the findings were consistent with the victim's disclosure that she suffered bleeding following the insertion of the "microphone,"

because "experts say that [hymenal tissue transections below the 3 and 9 o'clock positions] are confirming findings of child sex abuse." On cross-examination, Nurse Hackett admitted that sometimes injuries mimic sexual abuse, but stated that in this case, the gaps in the victim's hymenal tissue "should not be there. She didn't do it herself. That would not be a possibility for this child. This was an indication of trauma." On redirect examination, Nurse Hackett denied that the victim's injuries "mimic[ked] sexual abuse," stating, "No, these findings are confirming sexual abuse." (Tr. 660.) Nurse Hackett admitted that she did not observe any trauma to the victim's anus, which she testified is not uncommon. She further admitted that she was unaware that the victim suffered from a vaginal bleeding incident at five-years-old.

{¶ 15} Over objection, Nurse Hackett testified that her findings were submitted for a peer review and reviewed by two physicians, one of whom signed off on her report. The jury received the victim's medical records, including the examination photographs.

{¶ 16} Based on the medical records, police reports, and statements, CCDCFS issued a disposition letter substantiating the allegations of sexual abuse. Jackson explained that a subsequent letter finding subsequent reported allegations of sexual abuse "unsubstantiated" was issued because the subsequent report was duplicative of the first report.

{¶ 17} Detective Kennedy obtained a warrant for Johnson's arrest and visited mother's home. During the visit, Detective Kennedy took photographs of

the house but did not observe any home-security cameras. She stated that mother was uncooperative when asked if she could speak to the other children. Detective Kennedy said she observed a karaoke machine and when she asked about the machine's microphone, mother told her that she "threw it out."

### 4. The State Rests and Moves to Amend the Indictment

{¶ 18} The State rested but requested to amend the indictment pursuant to Crim.R. 7(D). The State requested to amend the date range in Count 1 from "on or about February 1, 2023 to March 1, 2023" to "March 17, 2021 to March 16, 2023" and amend the date range in Count 2 from "on or about January 17, 2022" to "on or about January 17, 2023." The State further requested to amend Count 2 to replace the word "microphone" to "object."

{¶ 19} Defense counsel objected to the amendments, specifically because the State maintained during discovery that the object listed in Count 2 was a "microphone" but now contended that the "microphone" was a pink vibrator or dildo. Counsel further objected to the timing of the disclosure, stating that the State provided the photograph of the pink vibrator only the day before trial, which was a Sunday. Furthermore, counsel claimed that the defense's expert report was now "compromised" because their expert reviewed the medical records and photographs under the impression that the object used was, in fact, a microphone, and not a sexual device.

{¶ 20} The trial court denied Johnson's request for time to obtain an amended expert report but granted the State's request to amend the indictment.

The trial court admitted the State's exhibits, including the photograph provided by mother of the "microphone."

### 5. Johnson Presents His Defense

{¶ 21} After the trial court denied Johnson's Crim.R. 29 motion for acquittal, he presented his defense, calling two witnesses.

{¶ 22} Katari Lundy, chief investigator for the Lake County Public Defender's Office stated that she previously worked as an investigator for the Cuyahoga County Public Defender's Office and as a child protection specialist for CCDCFS. She testified that she interviewed mother, who never indicated that the victim was sexually assaulted. Lundy further stated that she interviewed the victim's nine-year-old brother over the telephone, who did not indicate that his sister disclosed any sexual abuse or assault to him. According to Lundy, the victim's brother stated that no abuse occurred, including the bathroom incident. Lundy admitted, however, that she did not interview the victim or review her medical records.

{¶ 23} Dr. Mary Deborah Lonzer, a qualified expert in the fields of general pediatrics and pediatric sexual abuse, testified that she reviewed the victim's medical records and reports, including photographs.[1] She stated that her review of the medical records did not reveal any injury to the anus but, if a person was

---

[1] Prior to trial, the State objected to Dr. Lonzer's report and testimony, contending that both were inadmissible under the Evid.R. 701 and 702. After a *Daubert* hearing, the trial court denied the State's motion, permitting Dr. Lonzer to testify as an expert in both pediatric medicine and pediatric sexual abuse.

subject to repeated sexual assault, there would be a reasonable expectation of visible evidence. Over objection, she explained how to conduct an examination to "confirm or not confirm" sexual assault and opined, based on reasonable degree of medical certainty, that she did not see any evidence in the photographs supporting the victim's allegations. During her testimony, Dr. Lonzer was presented with information that the "microphone" was actually a sexual device. She stated that the photograph did not provide any characteristics of the device, i.e., size and texture, but regardless, she opined that the insertion of the device would cause pain but was unsure whether it would cause trauma.

{¶ 24} On cross-examination, Dr. Lonzer admitted that she did not watch the victim's forensic interview with Jackson prior to completing her expert report, nor was she aware that the victim disclosed bleeding after the "microphone" incident. Nevertheless, Dr. Lonzer stated that the subsequent disclosure that the "microphone" was a sexual device did not change her opinion that no evidence existed to substantiate sexual trauma.

{¶ 25} The defense rested, subject to the admission of two exhibits — the letter mother sent to East Cleveland police requesting to cancel the report and Dr. Lonzer's expert report. The State objected to the admission of the letter, contending that the letter constituted hearsay because no one read the letter while testifying and mother did not explain it. The court agreed with the State, finding it was hearsay and neither mother nor Detective Kennedy sufficiently addressed it

while testifying. Furthermore, the trial court expressed concern that the victim, who did not testify about the letter, also signed the letter.

## B. The Verdicts and Sentence

{¶ 26} The jury found Johnson guilty of all counts, including the furthermore clause attendant to each count that the victim was under the age of ten at the time of the offenses. The trial court then conducted a bench trial on the SVP specification. After weighing the evidence, the trial court found Johnson guilty of being a sexually violent predator. Based on the convictions, Ohio law required the trial court to impose a prison sentence of life without the possibility of parole.

## II. The Appeal

{¶ 27} Johnson raises seven assignments of error, which we will address out of order for ease of discussion.

### A. Jury Trial Waiver of SVP Specification

{¶ 28} Prior to the start of trial, the State requested:

[PROSECUTOR]: I just want to be sure that the sexually violent predator specification is not read to the jury. If the defendant is found guilty, he will have to opt to try that specification to this Court or to the jury.

THE COURT: When does that decision need to be made?

[PROSECUTOR]: Preferably prior to trial, but I've also had it after trial the defendant opts, which then would like to try that specification to the Court or to the jury. We would just need to know because we have to hold the jury and let them know they would have to come back another day.

[DEFENSE COUNSEL]: Your Honor, we would try that portion to the bench.

THE COURT: Thank you for letting us know. I will make a point, the jury will hear nothing as to the SVP specification.

(Tr. 177-178.)

{¶ 29} After the jury notified the court that it had reached a verdict, the trial court noted that Johnson previously indicated his intention to try the SVP specification to the bench, but then recently decided to try the specification to jury. In response to this new intention, defense counsel reaffirmed, "Judge, we'll try — if necessary, we'll try [the SVP specifications] to the bench." (Tr. 894-895.)

{¶ 30} Just prior to the jury reading the verdict, the trial court stated in open court that it was "in receipt of [Johnson's] waiver of jury trial with a notation as to the [SVP] specifications on Counts 1 to 5 only." (Tr. 896.) The court confirmed with Johnson that (1) it was his intention to try those specifications directly to the court, instead of the jury, (2) Johnson had no questions about the waiver, and (3) it was his signature on the waiver. Johnson's counsel further stated that he advised Johnson of his rights and that Johnson wished to proceed with the trial judge considering the SVP specification, if necessary. (Tr. 896-897.) The court accepted the waiver and stated that it would "file a waiver without further delay." (Tr. 897.)

{¶ 31} After the jury found Johnson guilty of all counts, the trial court reconvened to consider the SVP specification. The court stated, "At that time [Johnson] did elect to try to the SVP specification to the bench, and that waiver

was filed with the clerk's office." (Tr. 903.) No party objected to or questioned the timing of the filing.

{¶ 32} In his seventh assignment of error, Johnson contends that his waiver of his right to a jury trial on the SVP specification was invalid because the waiver occurred after the commencement of trial.

{¶ 33} In support, he relies on the requirements of R.C. 2945.05 setting forth the procedure when a defendant waives his right to a jury trial in a "criminal case." The Ohio Supreme Court, however, has held that the provisions of R.C. 2945.05 do not apply to a request by a defendant to have the trial judge determine specifications attached and ancillary to the charges in a criminal action. *State v. Nagel*, 84 Ohio St.3d 280, 287 (1999); *see also State v. Oldham*, 1999 Ohio App. LEXIS 2152 (8th Dist. May 13, 1999), citing *Nagel*. Rather, R.C. 2971.02 specifically governs the determination of a sexually violent predator specification and only requires a defendant "to elect" whether to have the court instead of the jury determine the specification. Accordingly, the procedures and process required in R.C. 2945.05 that the jury waiver "shall be in writing, signed by the defendant, and filed in said cause and made part of the record thereof" — do not apply when electing to try a specification before the trial judge. *See State v. Jordan*, 2017-Ohio-381, ¶ 24-26 (8th Dist.) (finding no error when the trial judge determined the sexual motivation specification without the defendant executing a waiver in open court); *State v. Burks*, 2015-Ohio-1246 (9th Dist.) (finding that the

defendant's election to have the trial court determine the SVP specification did not need to be in writing).

{¶ 34} In this case, Johnson's defense counsel stated on the record prior to the start of the jury trial that Johnson elected to have the SVP specification tried to the bench. Accordingly, nothing more was required under R.C. 2971.02. Nevertheless, before the jury announced its verdict, Johnson executed a written waiver in open court that was subsequently filed prior to the trial court hearing any evidence on the specification. Based on the foregoing, Johnson's argument is without merit because the trial court complied with R.C. 2971.02. We overrule the seventh assignment of error.

**B. Evidentiary Rulings**

{¶ 35} In his fourth and fifth assignments of error, Johnson challenges two evidentiary rulings made by the trial court that he contends deprived him of due process and a fair trial. We will not reverse a trial court's ruling on evidentiary issues absent an abuse of discretion and proof of material prejudice. *See State v. Belton*, 2016-Ohio-1581, ¶ 116.

**1. Sexual Assault Nurse Examiner's Testimony**

{¶ 36} Nurse Hackett testified about the examination she performed on the victim, stating that she noted hymenal tissue transections at the 4 and 8 o'clock positions of the victim's hymen. When asked why she documented these transections and why they were abnormal to her, Nurse Hackett responded, "Because they shouldn't be there. A gap in hymenal tissue is confirming sexual

abuse or sexual assault according to the research and studies by Nancy Kellogg and Dr. Joyce Adams. They are really the experts —" (Tr. 595-596.)

{¶ 37} Defense counsel objected and during the side bar conversation contended that

> [Nurse Hackett is] making assertions about specific studies authored by specific individuals. I can't cross-examine those people. Now, the correct way she could do it is just be general about it. That doesn't violate hearsay, the Supreme Court says, but she is giving very specific authors who conducted these studies and I have no way to cross-examine them.

(Tr. 596.) The trial court overruled the objection.

{¶ 38} Following the sidebar, the State continued questioning Nurse Hackett, without objection, about her findings. She testified that "transections in that location below the 3 and [9 o'clock] positions, the experts say that these are confirming findings with child sexual abuse." The State further inquired "why that specific area . . . is the concern and confirmation of some sexual abuse?" (Tr. 597.) Hackett again repeated that the studies by Kellogg and Adams "[say] if that transection goes to or through the hymen with no discernible tissue in that area, that's confirming that something happened, sexual abuse." (Tr. 598.)

{¶ 39} In his fourth assignment of error, Johnson contends that the trial court abused its discretion when it permitted Nurse Hackett to offer testimony that the physical evidence in the case confirmed sexual abuse, thus depriving him of his constitutional right to due process and a fair trial.

{¶ 40} We initially note that the objection raised during trial was not necessarily about Nurse Hackett's terminology or conclusion "confirming sexual abuse," but more associated with relying on certain studies and the inability to cross-examine the authors of those studies. Typically, "[w]hen a party makes a specific objection to the admission of evidence on one ground, he waives all other objections on appeal." *State v. Nichols*, 2009-Ohio-1027, ¶ 15 (7th Dist.); *see also State v. Hale*, 2008-Ohio-3426 (holding that a failure to state the specific ground of objection, waives a claim on appeal pursuant to Evid.R. 103). In those instances, we review the trial court's ruling under a plain-error standard pursuant to Crim.R. 52(B) — an obvious error occurred and it affected the defendant's substantial rights.

{¶ 41} We agree with Johnson that permitting Nurse Hackett to use the phrase "confirmed sexual abuse" infringed on the jury's factfinding function of determining whether the victim suffered sexual abuse or assault committed by Johnson. As the State rightfully noted when objecting to Dr. Lonzer's testimony using the same "confirming" language, "using [phrases] like confirming or not confirming sexual assault is inappropriate. The exam doesn't confirm that a sexual assault actually occurred or not confirmed that a sexual assault occurred. There could be exams where she can't say, based on the exam, a sexual assault definitely occurred. That's inappropriate and it impedes on the [province of] the jury." (Tr. 777.) Had Nurse Hackett testified that the results of the physical examination were consistent with or confirmed penetration, then our conclusion may be different.

{¶ 42} Finding error, however, does not end our review because under a plain-error standard of review, we must further decide whether the error affected Johnson's substantial rights, i.e., that he was prejudiced by the admission of the testimony. *See* Crim.R. 52(B).[2]

{¶ 43} After reviewing the entirety of the trial testimony and evidence, we find that Nurse Hackett's characterization that the examination "confirmed sexual abuse" did not affect Johnson's substantial rights because Dr. Lonzer offered expert testimony contradicting her conclusion. The trial court, over the State's objection, allowed Dr. Lonzer to present expert testimony as to how she would examine a patient to either confirm or not confirm that a sexual assault occurred. Dr. Lonzer opined, based on her review of this victim's medical records and photographs, that the evidence did not support a finding of sexual assault. Accordingly, the jury was presented with two witnesses who offered competing opinions about the medical records and photographs and whether the evidence supported a finding of sexual assault. "In reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist. 1993). This is true whether lay witnesses or expert witnesses offer the testimony. *See State v. Price*, 2019-Ohio-1642, ¶ 72 (8th Dist.) (referring to significant differences in experience of different experts in explaining

---

[2] Even if this court found that Johnson's objection properly preserved this issue on appeal, our conclusion would be the same because under a harmless-error standard of review, the error must also affect a defendant's substantial rights. Crim.R. 52(A).

that a jury could have found one more credible than the other); *State v. Neff*, 2009-Ohio-6846, ¶ 19 (10th Dist.) (noting that the State's expert witness personally conducted the autopsy rather than merely doing a record review when explaining why the jury could have found the State's expert opinion more credible).

{¶ 44} Based on the foregoing, we find that Johnson's substantial rights were not affected by Nurse Hackett's testimony. Accordingly, Johnson's fourth assignment of error is overruled.

### 2. Mother's Letter to Police

{¶ 45} Approximately a week after mother took the victim to the East Cleveland Police Department to report the sexual abuse against Johnson, mother wrote a letter to police, telling them that the accusations were a result of a misunderstanding and that she wanted cancel the investigation. Mother identified the letter during cross-examination, admitted that she wrote it, and agreed that she told police that the bathroom incident was a misunderstanding. Detective Kennedy also testified about mother's letter, stating that she reviewed it, marked it into evidence, and continued with her investigation.

{¶ 46} Following the close of Johnson's defense, he moved to admit mother's letter into evidence, contending that it was admissible because mother authenticated it and both mother and Detective Kennedy testified about it. The State objected, contending the letter contained inadmissible hearsay. The trial court agreed, denied admitting the letter into evidence, and expressed concern that

the victim, who did not testify about the letter, also signed it.  The letter was not proffered into evidence.[3]

{¶ 47} Johnson contends in his fifth assignment of error that the trial court abused its discretion when it refused to admit mother's letter, which was also signed by the victim, because the letter was admissible pursuant to Evid.R. 803(8)(b), the hearsay exception applicable to public records and reports.

{¶ 48} Evid.R. 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Hearsay is generally inadmissible unless it falls under an exception.  Evid.R. 802.  Evid.R. 803(8)(b) provides an exception that public records, reports, and statements are admissible hearsay, even though the declarant is available as a witness, when they constitute

> matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

{¶ 49} In *State v. Johnson*, 2024-Ohio-3108, ¶ 29 (8th Dist.), this court explained that statements made to police that are not the words of law enforcement personnel fall outside of this exception.  This rule applies whether the statements are verbal or in written form.  *See, e.g., id.* (finding CCDCFS notes containing victim

---

[3] During deliberation, the jury asked to see the letter mother sent to the police. Because it was not admitted into evidence, the trial court responded that the jury had all the evidence before it.

statements inadmissible under this exception). "Evid.R. 803(8)(b) allows the admission of public records that would otherwise be hearsay; specifically, it allows for the admission of relevant police reports by the defendant in criminal cases. It does not provide for the admission of hearsay within the reports." *State v. Rowe*, 1986 Ohio App. LEXIS 5467 (5th Dist. Jan. 29, 1986).

{¶ 50} Mother's letter that Detective Kennedy marked into evidence as part of the investigation is hearsay within the police record and thus falls outside of Evid.R. 803(8)(b). Accordingly, we find no abuse of discretion by the trial court in denying the letter's admission into evidence. Johnson's fifth assignment of error is overruled.

### C. Misstated Jury Instruction

{¶ 51} In open court, the trial court gave the following instruction to the jury: "Before you find the defendant guilty of rape, you must find beyond a reasonable doubt that . . . the defendant did engage in sexual *contact*, to wit, in Count 1, anal intercourse and/or Count 2, inserted pink object into victim's vagina and/or in Count 3 vaginal intercourse with [the victim]." (Emphasis added.) (Tr. 878.) The trial court then used the words, "sexual conduct" when it continued with the instructions, stating that the victim "whose age at the time of the said sexual conduct was less than 13 years." (Tr. 878.) Regarding the rape offenses, the trial court then defined sexual conduct for the jury; it did not provide a "sexual contact" instruction for these offenses. (Tr. 878-879.)

{¶ 52} In his third assignment of error, Johnson contends that the trial court committed plain error when it instructed the jury that for rape, the State only needed to prove "sexual contact" rather than "sexual conduct." He further contends in his second assignment of error that because his counsel failed to object to this instruction, he did not receive effective assistance of counsel as guaranteed under the Sixth Amendment to the United States Constitution.

{¶ 53} "Jury instructions are to be viewed as a whole to determine whether they contain prejudicial error." *State v. Dues*, 2014-Ohio-5276, ¶ 39 (8th Dist.). Because Johnson did not object to court's reading of the jury instructions, he must demonstrate plain error, which requires him to point to "an obvious defect in a trial's proceedings" that "affected substantial rights," and "affected the outcome of the trial." *Dues* at ¶ 40, citing *State v. Steele*, 2013-Ohio-2470, ¶ 29; Crim.R. 30(A) and 52(B). For us to notice plain error, "the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *Steele* at ¶ 30.

{¶ 54} The written jury instructions submitted to this court as part of the appellate record provide:

> Before you find the defendant guilty of rape, you must find beyond a reasonable doubt that . . . the defendant did engage in sexual *conduct*, to wit:
>
> In Count One: Anal intercourse; and/or
>
> In Count Two: Inserted pink object into victim's vagina and/or
>
> In Count Three: Vaginal intercourse, with [the victim] who was not the spouse of the offender, and [the victim] whose age at the time of

the said sexual conduct was less than thirteen years of age . . . whether or not the offender knew the age of [the victim].

(Emphasis added.)

{¶ 55} Our review of the record reveals that "sexual contact" in the verbal instruction was properly stated as "sexual conduct" in the printed jury instruction provided to the jury, and thus the trial court merely made a misstatement when it read the jury instructions to the jury. Accordingly, the trial court's written instructions provided to the jury were legally correct and complete. *See* tr. 882-883 ("The verdict forms are as follows: You will . . . get this binder which includes both instructions. The actual copy I've been reading to you as well as these verdict forms which I'm now going to read to you in court and actually show you."); *see also* tr. 891 ("You'll get this binder with the instructions and the jury forms.").

{¶ 56} Johnson has not argued that the misstatement somehow caused the jury confusion, and thus he has not demonstrated prejudice by the misstatement. *State v. Makin*, 2017-Ohio-2649, ¶ 26 (8th Dist.), citing *Dues,* 2014-Ohio-5276, at ¶ 44. Accordingly, because the jury received the correct written instruction, counsel cannot be deemed ineffective in failing to object. Johnson's second and third assignments of error are overruled.

## D. Manifest Weight of the Evidence

{¶ 57} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting

*State v. Thompkins*, 78 Ohio St.3d 380, 387.  In a manifest-weight analysis, the reviewing court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'"  *Thompkins* at *id*., quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).  The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction.  *Thompkins* at 386.

{¶ 58} Johnson contends in his first assignment of error that the trial court erred in entering judgment of conviction on each count of the indictment as against the manifest weight of the evidence, in derogation of his right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.  Specifically, he contends that his case is the exceptional case where the evidence weighs heavily against his convictions because the physical evidence did not support the victim's testimony and no one in the household corroborated the victim's accusations.

{¶ 59} A rape conviction obtained without corroborative evidence does not necessarily render the conviction against the manifest weight of the evidence.  *State v. Wilk*, 2022-Ohio-1840, ¶ 63 (8th Dist.).  In this case, however, the jury was presented with physical evidence to review when rendering its verdict.  Moreover, the jury considered testimony by two medical professionals who offered differing

opinions about the physical evidence. Nurse Hackett, who performed the sexual-assault examination, testified that based on her 30 years of experience and performance of over 100 sexual-assault exams of children under the age of 18, the gaps or transections in the hymenal tissue were consistent with the victim's statements and accounts of sexual abuse. Dr. Lonzer, a qualified expert, disagreed, opining to a reasonable degree of medical certainty that the medical evidence was not consistent with the victim's statements and accounts of sexual abuse.

{¶ 60} Regarding corroboration by other household members, the jury heard testimony that the victim confided in her brother about the abuse and that on at least one occasion, he may have witnessed the abuse. Despite this testimony, the jury also heard testimony from mother and Lundy that the victim's brother denied that Johnson abused the victim.

{¶ 61} Ohio courts have consistently stated that "in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness" and it does "not lose its way simply because it chose to believe the State's version of the events, which it had a right to do." *See, e.g., State v. Antill,* 176 Ohio St. 61, 67 (1964); *State v. Abudu,* 2023-Ohio-2294, ¶ 65 (8th Dist.); *State v. Morten*, 2010-Ohio-117, ¶28 (2d Dist.).

{¶ 62} Based on the foregoing and reviewing the entirety of the record, including any conflicts in testimony and evidence, we find that this is not the exceptional case requiring this court to reverse Johnson's convictions and order a new trial. The first assignment of error is overruled.

### E. Cumulative Error

{¶ 63} In his sixth assignment of error, Johnson contends that the cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived him of a fair trial and a denial of due process.

{¶ 64} Under the cumulative-error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223. We have found no unfairly prejudicial error. Thus, the doctrine of cumulative error does not apply to this case, and we overrule this assignment of error.

{¶ 65} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR