[Cite as *State v. Hughes-Davis*, 2025-Ohio-3151.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                    :

                        No. 114695

    v.                                             :

CHRISTOPHER HUGHES-DAVIS,          :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-693449-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Steven N. Szelagiewicz, Assistant Prosecuting Attorney, *for appellee.*

James J. Hofelich, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant Christopher Hughes-Davis appeals his convictions for rape and gross sexual imposition following a bench trial. For the reasons that follow, we affirm.

## I.  Procedural Background

{¶ 2}  In July 2024, the State named Hughes-Davis in a 14-count indictment charging him with two counts of rape, in violation of R.C. 2907.02(A)(1)(b) (Counts 1 and 3); two counts of rape, in violation of R.C. 2907.02(A)(2) (Counts 9 and 11); four counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) (Counts 2, 4, 13, and 14); and six counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1) (Counts 5, 6, 7, 8, 10, and 12). Counts 1-4, 9, 11, and 13-14 each contained a sexually violent predator specification ("SVP specification").  Hughes-Davis waived his right to a jury trial.

## II.  Bench Trial

### A.  Victim 1's Testimony

{¶ 3}  Victim 1, age 16, testified that Hughes-Davis started "sexually touching" her when she was around ten years old when they lived in Maple Heights.  She stated that he told her they were going to play a game, and he took her to the basement where he made her perform fellatio.  She stated that she was confused because she was so young and did not understand.

{¶ 4}  Victim 1 explained that a subsequent instance of abuse occurred when she was 12 or 13 years old when they lived on Glenmont Road in Cleveland Heights.  She stated that one incident occurred in his bedroom when he again invited her to play a game.  Victim 1 stated that during this time he tried to "hump" her, explaining that he tried to have sex with her by making her lay on his bed and he laid on top of her.  Victim 1 said that he tried to take her clothes off and "just

tr[ied] to have sex with me" by moving "up and down."  She stated that he tried to insert his penis in her vagina but was unable to do so.

{¶ 5}  Victim 1 testified about another incident of abuse that occurred when she lived in South Euclid.  She stated the "same things" happened where Hughes-Davis would lay her down and try to have sex with her.  She stated these instances of abuse continued even after she moved to Preyer Avenue in Cleveland Heights, where Hughes-Davis would try to have sex with her.  The State elicited testimony from Victim 1 that Hughes-Davis also made her perform fellatio at that address, along with all the prior locations where they had lived.  She explained that she could not remember specific times because the abuse started when she was ten years old.

{¶ 6}  Victim 1 stated that she did not disclose the abuse until she learned that her sister, Victim 2, disclosed similar abuse by Hughes-Davis.  She explained that after talking with her sister's social worker, she wrote her mom a letter disclosing the abuse.  She further testified that she learned that Hughes-Davis had also abused two other girls in Ravenna, Ohio.

**B.  Victim 2's Testimony**

{¶ 7}  Victim 2, age 11, testified that her relationship with Hughes-Davis was "bad."  She explained that he sexually touched her two times when she was six years old at the Preyer address.  Victim 2 said the first incident occurred in her brother's bedroom where Hughes-Davis laid on top of her and moved his body "up and down" on her body.  She described that they were both clothed but she could

feel his "private part" rubbing back and forth on her "private part." She stated that Hughes-Davis stopped when her mother walked into the room and told him to get off her. Victim 2 testified that the second incident occurred in Hughes-Davis's bedroom where he again laid on top of her. She stated that she disclosed the abuse to her mother and sisters.

### C. Victims 1 and 2 Mother's Testimony

{¶ 8} Mother of both Victims 1 and 2 testified that she believed the relationship between Victim 1 and Hughes-Davis was a close bond and she never suspected any inappropriate behavior. She stated that Hughes-Davis denied that he abused Victim 2 and, even though Mother contacted the police, he was not arrested at that time. She was not questioned about Victim 2's allegation that she walked in on Hughes-Davis abusing Victim 2.

{¶ 9} Mother testified that she followed up with a social worker at a child advocacy center and learned from the social worker that Victim 1 also disclosed abuse by Hughes-Davis. She stated that Victim 1 wrote her letter about the abuse — identified as State's exhibit No. 1.

### D. Social Worker's Testimony

{¶ 10} J'nae Bennett, a social worker with Cuyahoga County Division of Children and Family Services, was assigned to Victim 2's report. She testified that during her investigation, she discovered that Victim 1 also reported abuse by Hughes-Davis. She stated that in delayed disclosure cases, typically no physical evidence is found. Nevertheless, the agency made a disposition of "indicated"

based on the "emotional aspect" of Victim 2's report. Regarding Victim 1's report, the agency again made a disposition of "indicated." According to Bennett, Victim 1 was hesitant to speak, but appeared emotional and described her body language as "closed," because she sat hunched, with her head down.

### E. Verdict and Sentence

{¶ 11} After deliberating, the trial judge found Hughes-Davis guilty of all charges. The trial judge then considered evidence and arguments regarding the SVP specifications. After taking the matter under advisement, the trial court found Hughes-Davis not guilty of the SVP specifications. The trial court ordered Hughes-Davis to serve a prison term of life with the possibility of parole after 13 years.

{¶ 12} This appeal followed.

## III. The Appeal

### A. Admission of the Letter

{¶ 13} Victim 1 testified that she delayed reporting the abuse because she was scared of Hughes-Davis and did not understand why he did this to her because he should have been her protector. She stated that once she found out that he was also sexually abusing her sister, she came forward and told the sister's social worker about the abuse she suffered by Hughes-Davis. Because she was scared to speak in front of her mother about the abuse, she wrote her a letter. The State marked the letter as State's exhibit No. 1 and showed Victim 1 the letter. Defense counsel objected to Victim 1 reading the letter, but raised no objection to Victim 1

identifying the letter as the same letter she wrote to her mother. She did not discuss the contents of the letter.

{¶ 14} Victim 1's mother testified that her daughter wrote her a letter disclosing the abuse. Mother did not read the letter during her testimony, but identified it as the letter she received from Victim 1.

{¶ 15} Following the close of testimony, the State moved to admit the letter into evidence. Defense counsel objected, contending that mother and Victim 1 testified and, thus, the State was using the letter merely to bolster Victim 1's testimony. Over objection, the trial court admitted the letter into evidence. In his first assignment of error, Hughes-Davis challenges the court's evidentiary ruling.

{¶ 16} "'It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court.'" *Caruso v. Leneghan*, 2014-Ohio-1824, ¶ 32 (8th Dist.), quoting *State v. Heinish*, 50 Ohio St.3d 231, 239 (1990). An abuse of that discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 17} Hughes-Davis contends that the trial court abused its discretion when it admitted Victim 1's letter into evidence. He contends that the letter was inadmissible because no foundation was established, no questions were posed to Victim 1 about the letter or that it was used to refresh her recollection, and the State impermissibly used the letter to bolster Victim 1's testimony about why she delayed reporting the sexual assault.

{¶ 18} The State contends that the letter was admissible pursuant to an exception to the hearsay rule, but even if inadmissible, it was harmless because the contents of the letter were cumulative to Victim 1's testimony. The State has not identified the applicable hearsay exception, and upon our review, we find that no exception to the hearsay rule applies.

{¶ 19} Victim 1's letter was hearsay, and the trial court should not have admitted letter into evidence. *See State v. Johnson*, 2025-Ohio-2770 (8th Dist.) (letter written by mother to the police requesting that charges be dropped was deemed inadmissible hearsay when the defense attempted to introduce the letter during the investigating detective's testimony); *State v. Lott*, 2002-Ohio-4540 (5th Dist.) (letters written by victim to bus driver and school counselor, disclosing prior sexual abuse were ruled as inadmissible hearsay).

{¶ 20} Finding the letter inadmissible, however, does not end our review because under a harmless-error standard of review, we must further decide whether the error affected Hughes-Davis's substantial rights, i.e., that he was prejudiced by the admission of the letter. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See State v. Harris*, 2015-Ohio-166. Under the harmless-error standard of review, the State "bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 2004-Ohio-297, ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741 (1993).

{¶ 21} Moreover, when reviewing a conviction following a bench trial, "an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict" and this presumption "may be overcome only by an affirmative showing to the contrary by the appellant." *State v. Wiles,* 59 Ohio St.3d 71, 86 (1991), citing *State v. Post*, 32 Ohio St.3d 380, 384 (1987), *see also State v. Primous*, 2020-Ohio-912, ¶ 57 (8th Dist.).

{¶ 22} We agree with the State that the error was harmless. Although the trial judge noted when rendering his verdict that he reviewed the letter, the trial judge did not elaborate or discuss the contents of the letter in explaining his verdict. (Tr. 152.) Rather, he focused on the victims' testimony, finding the testimonies both credible and consistent.

{¶ 23} Based on our review of the letter and the trial testimony, we find that the letter drafted by Victim 1 did not prejudice Hughes-Davis. The statements and allegations made in the letter were similar to Victim 1's testimony. During cross-examination, Hughes-Davis identified inconsistencies in Victim 1's testimony and questioned her on allegations made in the letter about abuse that other girls suffered from Hughes-Davis. Accordingly, even though it was improper to admit the letter into evidence, we find that it did not affect his substantial rights, thus denying him a fair trial. The first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 24} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue

rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 24.

{¶ 25} "In our manifest-weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury." *State v. Crenshaw*, 2020-Ohio-4922, ¶ 23 (8th Dist.). "'When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt.'" *State v. Worship*, 2022-Ohio-52, ¶ 34 (12th Dist.), quoting *State v. Tranovich*, 2009-Ohio-2338, ¶ 7 (12th Dist.). To warrant reversal from a bench trial under a manifest-weight-of-the-evidence claim, this court must determine that "'the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Crenshaw* at *id.,* quoting *State v. Bell*, 2019-Ohio-340 ¶ 41. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at ¶ 25; *see also State v. Brown*, 2025-Ohio-2804, ¶ 30-31 (reiterating the *Thompkins* manifest-weight standard of review).

{¶ 26} Hughes-Davis contends in his second assignment of error that his convictions are against the manifest weight of the evidence. He makes no argument challenging the actual elements of the offenses or whether the evidence

supports the elements  Rather, he contends that his convictions are against the weight of the evidence because there was no physical evidence presented, Victim 2's testimony was "spar[s]e," and Victim 1's testimony was not credible because of the delayed reporting and because it included another allegation of abuse by a different individual.

{¶ 27} First, physical evidence is not required to support a conviction for rape or gross sexual imposition. *See generally State v. Scott*, 2022-Ohio-2768, ¶ 39 (8th Dist.).  Accordingly, the fact that Hughes-Davis's conviction was based solely on the victim and witness testimony and not any physical evidence does not render his conviction against the manifest weight of the evidence.

{¶ 28} Moreover, this court has held that a delayed disclosure by a minor victim of sexual misconduct does not render a conviction against the manifest weight of the evidence. *State v. Peterson*, 2024-Ohio-2903, ¶ 20 (8th Dist.), citing *State v. Harris*, 2018-Ohio-578, ¶ 53 (8th Dist.).  Here, the trial court considered the testimony of both victims, including any details surrounding the abuse and the reasons for disclosing or the delay in disclosing.  A trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial.  *State v. Jones*, 2020-Ohio-3367, ¶ 85 (8th Dist.).  Thus, a conviction is not against the manifest weight of the evidence "solely because the [trier of fact] heard inconsistent or contradictory testimony."  *State v. Rudd*, 2016-Ohio-106, ¶ 72 (8th Dist.), citing *State v. Wade*, 2008-Ohio-4574, ¶ 38 (8th Dist.).

{¶ 29} Finally, Hughes-Davis misconstrues the testimony that Victim 1 accused another individual of abuse. The trial court was presented with testimony that although Hughes-Davis suspected that Victim 1 was abused by another individual, Victim 1 stated that his allegation was false. Nevertheless, whether Victim 1 suffered abuse by another individual does not render the allegations against Hughes-Davis unfounded or his convictions against the manifest weight of the evidence. The trial court heard the testimony, reviewed the evidence, and determined that Hughes-Davis committed the sexual offenses against both victims. Hughes-Davis has not demonstrated that this is the exceptional case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that his convictions must be reversed. The second assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MICHELLE J. SHEEHAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR